267 So.2d 733 (1972)
GULF ENTERPRISES, INC.,
v.
MARYLAND CASUALTY COMPANY.
No. 5041.
Court of Appeal of Louisiana, Fourth Circuit.
October 17, 1972.
Rehearing Denied November 8, 1972.
*734 Charles B. Johnson, New Orleans, for plaintiff-appellant.
Marcel Livaudais, Jr., New Orleans, for defendant-appellee.
Before REDMANN, STOULIG and BAILES, JJ.
REDMANN, Judge.
Plaintiff door and paneling wholesaler appeals from the dismissal of its claim for loss of merchandise from its inventory, allegedly due to employee dishonesty against which defendant insured plaintiff.
The policy's pertinent insuring agreement is against "Loss of Money, Securities and other property which the Insured shall sustain * * * through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others."
The pertinent exclusion is of "loss, or that part of any loss, * * * the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss * * * which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees".
We note first that the policy is titled "Comprehensive Dishonesty, Disappearance and Destruction Policy", which would suggest an intent to offer comprehensive insurance covering dishonesty.
Second we observe, as courts have in the past, that it is ordinarily impossible for an employer subject to systematic theft to prove the amount of his loss without depending on inventory calculations. Ordinarily he can establish the amount of his loss by showing a beginning physical inventory to which purchases are added and from which sales are deducted. The amount by which the result exceeds a current *735 physical inventory represents the loss (assuming accurate record-keeping).[1]
If inventory computations are inadmissible, then, in the ordinary case, the "Comprehensive Dishonesty" insurance would be far from comprehensive, and indeed would afford coverage only under extraordinary circumstances.
Third, we note that the exclusion relates to loss, "the proof of which, either as to its factual existence or as to its amount, is dependent upon inventory computation". However, the policy language then purports to state a situation in which "this paragraph[2] shall not apply", namely that of "loss which the Insured can prove [not specifying `both as to its factual existence and as to its amount'] through evidence wholly apart from such computations." Logically one may argue that "loss" cannot be fully proved except by proving both existence and amount; yet the insurer chose to specify those two elements in the exclusory clause and not to specify them in the exception to the exclusion. (We view the "provided, however, [this exclusion] shall not apply" clause as an exception to the exclusion.)
If we adopt the view that the exception of "loss" proven wholly independently of inventory computation means proven as to both elements, then what purports to be an exception to the exclusion is not an exception at all, but a statement that the exclusion does not exclude cases it does not purport to exclude. Such an interpretation renders the whole exception clause meaningless, contrary to C.C. art. 1951.
Nevertheless, the only other interpretation we can give to the paragraph is that the exception of "loss" proven apart from inventory computations means that only the fact of loss, i. e., employee theft, need be so proven. In such a case the exclusion "shall not apply" and the loss, the amount of which may therefore be proven by inventory computation, is covered.
It must be admitted that the latter interpretation results in construing the exception as a partial contradiction of the exclusion.
Despite this serious difficulty, we conclude the latter interpretation is more consistent both with the policy's self-description of "comprehensive" and with its purported recital of some exception to its otherwise almost exhaustive exclusion. (And it is also more consistent with policy limits of $10,000, which suggests to a door-and-paneling wholesaler that he is protected against systematic theft since a single employee theft of merchandise could hardly approach that amount.)
Here the evidence rather clearly proves (wholly apart from plaintiff's business records) one instance of dishonesty by an employee named Tyler, plaintiff's warehouse supervisor, in removing material from plaintiff's warehouse without authorization (as a result of which Tyler was fired and no actual loss occurred). One earlier instance might be said proven by the circumstance observed by a co-employee, in addition to the seeming absence of the required pink warehouse-withdrawal document, that Tyler received money from the recipient of material. There is testimony that one Galloway came to the warehouse with some frequency (the lowest estimate being 20 times in a year, the highest three or four times in one week), and always asked for Tyler to wait on him, and usually got material from Tyler, yet an invoice search produced only six invoices to Galloway. There is testimony of one instance, *736 at a lunch hour, when "I seen [Tyler] load up something like maybe 80 sheets of paneling on the truck" of Galloway, although the greatest invoiced quantity was 32 sheets. Other evidence of possible theft (undetailed as to date, etc.) is testimony of co-employees' seeing Tyler delivering materials to others when co-employees could not see the pink warehouse delivery copy of the company's multi-page sales record, and did not see him turn in the pink copy to the office. The co-employees said nothing to Tyler because he was their supervisor, although they themselves were instructed to keep the pink sheet in sight when handling material and to return the sheet to the office immediately after delivery.
In our judgment the evidence above recited, while obviously insufficient to establish Tyler's guilt under criminal law requirements, i. e., beyond a reasonable doubt, is sufficient to meet the civil requirement of making it more probable than not that Tyler was engaged in the systematic theft of material from plaintiff. We observe that, as a "condition" of the policy, the insurance company required the insured "to keep records of all the insured property in such manner that the Company can accurately determine therefrom the amount of the loss." Thus the insurer remains in a position to defend against a claim like plaintiff's whenever either (1) the condition of suitable record-keeping is breached or (2) suitable records are kept which show that the insured has not suffered a loss despite evidence like that here, which fairly proves loss by systematic theft.
Once loss is thus established, the amount of loss involved is provable by inventory computations and, we repeat, necessarily so. See American Drug Stores, Inc. v. Home Indem. Co., 222 So.2d 512 (La.App. 1969); see also Standard Brass & Mfg. Co. v. Maryland Cas. Co., 153 So.2d 475 (La.App. 1963).
The parties stipulated that the inventories, as shown on the card system, "reflected various items missing" of a total value of $8,336.92.
We reject the demand for R.S. 22:658 penalties and attorney's fees because we cannot conclude the insurer's refusal of the claim was "arbitrary, capricious, or without probable cause".
We reject the demand for legal interest from date of proof of loss, and allow interest from 90 days after proof of loss, which is the date on which recovery became demandable under the contract. C.C. art. 1938; C.C.P. art. 1921.
The judgment is reversed and there is judgment for Gulf Enterprises, Inc. against Maryland Casualty Co. for $8,336.92 with legal interest from June 26, 1967 and all costs.
NOTES
[1] We here interpolate our rejection of plaintiff's theory that its card-inventory system calculations are not "inventory computations." The only difference we see is that inventory is adjusted for purchases and sales each time goods are bought or sold, rather than once a year or accounting period. Although the cards may pin-point the specific items "lost", the certainty of proof problem seems otherwise identical.
[2] Presumably meaning "this exclusion".