CALCASIEU–MARINE NATIONAL BANK

v.

AMERICAN EMPLOYERS INSURANCE COMPANY.

Civ. A. No. 15534.

United States District Court, W. D. Louisiana, Lake Charles Division.

Sept. 24, 1974.

Karl Boellert, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, La., for plaintiff.

Marian Mayer Berkett, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant.

NAUMAN S. SCOTT, District Judge:

## OPINION

This is an action by a national bank to recover the sum of $65,594.40 under insuring clauses B and E of a banker's blanket bond. Plaintiff, Calcasieu-Marine National Bank of Lake Charles, (hereinafter referred to as "Calcasieu-Marine"), is a national banking association organized under 12 U.S.C. § 21 et seq. and is domiciled at 844 Ryan Street, Lake Charles, Louisiana. Defendant, American Employers Insurance Company (hereinafter referred to as "American"), is a corporation organized under the laws of the State of Massachusetts, with its principal place of business in the City of Boston. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00. This court thus has jurisdiction under 28 U.S.C. § 1332.

Calcasieu-Marine had extensive dealings with Lake Rice Mill (hereinafter referred to as "Lake") from 1958 to 1969. It had extended a line of credit to Lake, which was a Louisiana corporation owning and operating a rice drier for south Louisiana and Texas farmers. The mill was closely connected in both operation and ownership with Rex Rice Mill (hereinafter referred to as "Rex") of Eunice, Louisiana, the principal

stockholders of both being Jack R. Smith and Jewel Boutte.

Lake had a standing agreement with Calcasieu-Marine to finance its purchases and sales of rice to meet its operating expenses. The mill would obtain loans from Calcasieu-Marine on short term notes which were backed by evidence of sale (invoices) and shipment (dray receipts). Upon completion of the shipment, the mill would negotiate a draft on its customer in the amount of the invoice, and would be given immediate credit thereon to pay off the outstanding promissory notes. Calcasieu-Marine held continuing personal guarantees of the mill's obligations in the total amount of $700,000.00 from Lake's two principal stockholders, Smith and Boutte.

In the course of dealing, Calcasieu-Marine lent Lake $243,000.00 at seven (7%) per cent interest and took four promissory notes which form one subject of this litigation. The repayment of these loans was secured by the continuing guarantees above referred to.

Starting in 1968, the economic and financial position of both Lake and Rex rapidly deteriorated. On March 22, 1969, Lake ceased operation, and at that time owed a total of $189,235.49 on these four unpaid promissory notes.

The other subject of this litigation concerns a sight draft drawn on Grace Kennedy Company of Canada in the amount of $40,594.40 in payment of rice sold them by Lake. When presented for collection by the bank to Grace Kennedy Company, the draft was dishonored on the basis that direct payment for the rice had already been made by check to Rex and the check deposited by Smith in the Louisiana Bank & Trust Company in Crowley, Louisiana for the Rex account. The Calcasieu-Marine was thus unable to collect on the draft, for which it had already given credit to Lake.

The bank claims the following losses under its bond: (a) The amount of the dishonored draft, under Clause B of the bond; (b) The unpaid balance on the four promissory notes, under Clause E of the bond (limited to $25,000.00 under the terms of the bond).

## THE LOSSES ON THE DISHONORED DRAFT (CLAUSE B)

On February 8, 1969, Lake presented a draft for $40,594.40 drawn on Grace Kennedy Company of Canada, to the Calcasieu-Marine's Lake Arthur, Louisiana branch. The draft was drawn to pay for shipment of rice. Following its long established procedure, Calcasieu-Marine credited Lake's account with the full amount of the draft, expecting the draft to be paid in a few days. Normally, when the draft was paid, the bank would charge Lake's account with interest for the time between crediting of Lake's account and payment of the draft. In this case, however, the draft was never paid. Two days earlier, on February 6, 1969, a check drawn by Grace Kennedy Company, covering the same shipment of rice, was deposited by Rex to its account in the Louisiana Bank & Trust Company in Crowley, Louisiana. Because it had previously paid for the same rice by check, Grace Kennedy Company refused to pay the draft. Calcasieu-Marine is seeking to recover this loss under Clause B of the bond, which purports to cover:

"(B) Any loss of property through . . . common law or statutory larceny, theft, false pretenses . . . whether effected with or without negligence on any part of any of employees . . . "

■ In Louisiana, all crimes are statutory. State v. Heymann, 256 La. 18, 235 So.2d 78 (1970). The Louisiana Criminal Code, R.S. 14:67, defines the crime of theft:

"Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations . . . "

This definition, when construed in a civil proceeding, need not be as narrowly

construed as in a criminal proceeding. Gulf Enterprises, Inc. v. Maryland Casualty Company, 267 So.2d 733 (La.App. 4th Cir. 1972). The question presented is whether the loss incurred by Calcasieu-Marine because of the dishonored draft was a theft within the provisions of Clause B.

■ Mr. Jack R. Smith, one of the major owners of both Lake and Rex, and the manager of both during the time period in question, testified that he was aware the draft and the check were for the same shipment of rice (pp. 52–54, deposition). Thus, Smith knew that the draft would be dishonored. We find that this transaction was a theft.

■ American claims that, even if this transaction constituted a theft, it is excluded by the language of Clause B which only covers such losses occurring "on the premises" of the bank. Losses of this nature have been held to have occurred "on the premises" of the bank involved, where the money was obtained from the bank by false pretenses. National Bank of Commerce in New Orleans v. Fidelity & Casualty Company of New York, 312 F.Supp. 71 (E.D.La. 1970), aff'd 437 F.2d 96 (5th Cir. 1971).

■ The underwriter urges further that this transaction constituted a loan or extension of credit, excluded from coverage by exclusion clause (d) of the bond. The argument is that, since the bank charged interest on the amount of the draft from the day it was credited to the Lake account until it was paid, the elements of a loan transaction were present. We do not agree. National Bank of Paulding v. Fidelity & Casualty Company, 131 F.Supp. 121 (S.D.Ohio, W.D. 1954). In *Paulding*, the bank (on similar facts) sued its bonding company, under Clauses B and E of its blanket bond, identical in terms with Clauses B and E of Calcasieu-Marine's bond. The defendant bonding company argued that the transaction was a loan, and thus excluded. In rejecting the bonding company's claim of exclusion, the Court stated (p. 123):

"In order to have a loan, there must be an agreement, either expressed or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree. In order to have a contract, there must be a meeting of the minds.

"In the eight transactions here which caused the plaintiff's loss and for which it seeks to recover against the defendants on their respective bonds, there was no meeting of the minds of the parties. The plaintiff bank expected a return of its money in the same manner that it had received it in the previous transactions.

"Mr. Stroller intended to get a credit to his account. He knew that the documents which he presented were fictitious in fact, that the plaintiff would rely upon them as genuine and that the plaintiff would not or could not get its money back from the alleged customers against whom the sight drafts were drawn. These are the elements of the transactions which constitute the false pretenses upon which the plaintiff bases its claim. There were no elements of loans in these transactions."

See also Hartford Accident & Indemnity Co. v. Federal Depositors Insurance Corp., 204 F.2d 933 (8th Cir. 1953) and National Bank of Commerce in New Orleans v. Fidelity & Casualty Company, 312 F.Supp. 71, 75 (E.D.La.1970), aff'd 437 F.2d 96 (5th Cir. 1971), cert. denied 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682.

We find that the act of obtaining funds through a fraudulent draft on Grace Kennedy Company amounted to theft, and that the loss occurred "on the premises" of the bank, within the meaning of Clause B. Therefore, Calcasieu-Marine is entitled to recover the $40,594.40 loss on this draft transaction.

## THE FOUR PROMISSORY NOTES (CLAUSE E)

Calcasieu-Marine asserts a claim under Clause E of the bond for loss incurred in the default of four notes ostensibly backed by evidence of sale (invoices) and shipment (dray receipts) of the rice involved. The bank is claiming that some of the signatures on the dray receipts were forged, and that it extended the loans in reliance on these forged documents. Clause E of the bond purports to cover losses the bank may have incurred by acting on the faith of securities, documents or other written instruments which prove to have been forged as to the signature of any person signing the documents.

Although there is evidence that some of the signatures were forged as contemplated under the provisions of Clause E of the bond, First National Bank in St. Louis v. American Insurance Co., 280 F.Supp. 620 (E.D.Mo.1968), aff'd 409 F.2d 1387 (8th Cir. 1969), we do not find that Calcasieu-Marine relied on these dray receipts as security for the notes.

That some of the dray receipts were forged is evidenced by the testimony of Lucille Lacy, a handwriting expert. She testified that, in her professional opinion, all of the names on the dray receipts in question were written by the same person. However, she could not say who this person was, and when asked if she could compare the signatures with that of Jack R. Smith, she said that she could not because she did not have enough samples of his handwriting to do so. In addition, Mr. Shirley Vige, who worked as a shipping clerk for Rex Rice Mill during this period of time, indicates he saw Mr. Smith sign the dray receipts in place of the truckers on several occasions. It is clear from the testimony that at least some of the dray receipts were signed by someone other than the truck driver who picked up the rice.

First National Bank in St. Louis v. American Insurance Co., *supra*, dealt with a very similar situation. Plaintiff bank agreed to furnish account receivable financing by taking promissory notes to which were attached invoices and bills of lading. Certain of these loans were made on the basis of invoices and bills of lading later found to have been either duplicated or entirely fictitious. When the scheme was found out, the plaintiff filed a claim with its bonding company, claiming coverage under Clause E of its banker's blanket bond, identical to Clause E of the bond sued on here. The Court there found that plaintiff had extended credit upon a written instrument (copy bill of lading) which proved to have been forged as to the signature of a maker or issuer (the ostensible railroad agent). Thus, it appears that this type of transaction does constitute a forgery under Clause E of the bond.

One difference, however, exists to distinguish the last cited case from the case sub judice. There, the Court found that the bank had proved its reliance on the forged documents in making the loans. This Court finds that plaintiff Calcasieu-Marine has not adequately shown its reliance on the documents in question here.

Mr. Earl Broussard, manager of Calcasieu-Marine's Lake Arthur, Louisiana branch, indicated that the invoices and dray receipts were necessary before the bank would approve the loan, and that loans would not have been made without these documents. However, his testimony shows clearly that Calcasieu-Marine did not rely on these documents as security for the loans evidenced by the four promissory notes. Calcasieu-Marine actually relied on history of its past dealings with Lake, the promissory notes signed by Lake, and the continuing guarantees of Mr. Smith and Mrs. Boutte. The invoices and dray receipts were accepted by Calcasieu-Marine as evidence that sales had been made. Their presence was necessary, but their accuracy was not. Mr. Broussard testified that some of the dray receipts were duplicates, and that when this occurred the duplicates were not compared for ac-

curacy with the originals, that no checking was done to make sure the dates on the dray receipts were accurate, or that the receipts reflected shipment of enough rice to cover the invoices. Calcasieu-Marine has failed to prove that it relied on the dray receipts as security for the payment of the notes. The bank's losses on these four promissory notes thus do not come under Clause E of its bond, requiring reliance by the bank, and recovery is denied.

Parties shall submit a judgment for execution by the Court.