REDMANN, Judge.
A “Comprehensive Dishonesty, Disappearance and Destruction” insurer, cast for a public warehouseman’s loss, by this appeal argues that the policy excludes the loss because proof of the loss is “dependent upon an inventory computation.” We affirm.
Frozen shrimp were brought to plaintiff in many-case lots of 50-pound cases. (The loss occurred in four lots of 200, 328, 345 and 66 cases.) Each lot was assigned a lot number when received, and the number was stencilled on individual cases in the lot. The customer knew the lot number from the time of storage, and would call for its shrimp by lot number. Both customer and warehouseman kept records of each lot. As the customer would call for, say, 27 cases of lot 2459, the warehouseman would note (on what is self-described as an “Inventory Record” of lot 2459) the delivery of 27 cases and by simple subtraction calculate the number remaining in that lot. The “inventory record” is not a record of the entire warehouse inventory; it is not a record of all the frozen shrimp; it is not even a record of all of a particular grade or kind of shrimp (as were the paneling records said in obiter dictum to be “inventory computations” in Gulf Enterprises, Inc. v. Maryland Cas. Co., La.App.1972, 267 So.2d 733, 734, n. 1, writ refused 271 So.2d 532). It is exclusively a record of one lot of goods —in our example, of the cases of shrimp constituting lot 2459.
Unlike a seller, who delivers the same kind of goods to many customers (as in Gulf Enterprises, supra), a warehouseman *729 delivers stored goods only to the depositor-customer or his order. Here, the customer itself kept records of its deposits and withdrawals of its own shrimp. When 8,250 pounds of the customer’s shrimp could not be returned to it because no longer present in the warehouse, the customer’s records of its own shrimp proved, and the warehouseman’s records merely confirmed, both loss and extent of loss. The warehouseman paid off more than the insurance policy limits.
Proof of the warehouseman’s loss thus is not “dependent upon an inventory computation” (even if the warehouseman’s own records could be called “inventory computations”). Therefore that policy exclusion does not apply.
A second problem is whether the independently proven loss is fairly shown to be the result of employee dishonesty.
The losses occurred during a brief period. For example, one lot of 345 cases was deposited October 8, 271 cases of that lot had been withdrawn by November 14, and the other 74 cases could not be found on November 20. All shortages occurred in lots deposited between July 31 and October 8, 1969.
The warehouse had rarely experienced losses prior to this loss, and then only of one or perhaps two cases — often because of breakage rather than disappearance.
The public storage facility of the warehouse had only two exterior doors. It also had one interior door, to a “cage” area from which another door led to a “vestibule” connecting with the blast freezer and with the shrimp customer’s own plant area (part of the same building but not otherwise connected to the public storage area). (Two other areas in the building, used by A & P and Arrow, did not connect at all to the public storage area and thus could not have been an avenue through which the loss might have occurred.) Plaintiff’s president knew of no evidence of anyone breaking into its facility during the period in question.
The only connection outsiders had with goods stored in the public section occurred in two ways at peak seasons. Specified employees of the shrimp plant would bring as yet undeposited shrimp through the cage and public storage area, out the front door to be received by plaintiff (for storage). Also, plaintiff’s employees would take A & P goods, ordered by A & P, through the back door, along a railroad-siding dock which extended the 300’ width of the building, and thence to the corner of the building. At that point an .A & P checker would receive them for transfer into A & P’s unconnected part of the building: and at times plaintiff’s own checker might not be present when the fork-lift operator would deposit the frozen goods on the dock (though a makeshift barricade was established to prevent unchecked removal of goods).
These circumstances do not defeat the trial judge’s conclusion that the most plausible or likely cause of the loss was dishonesty by unknown employees of plaintiff. From our review of the record, “[w]e cannot as reasonably ascribe any other cause.” Boudreaux v. American Ins. Co., 1972, 262 La. 721, 264 So.2d 621, 637. The preponderance of the evidence establishes that 165 cases of shrimp, totalling 8,250 pounds, could not have been removed from plaintiff’s refrigerator-like warehouse except by, or with the cooperation of, some employee or employees of plaintiff.
Defendant also questioned the sufficiency of proof of value of the lost shrimp. Proof was by testimony of the president of the corporation which owned the shrimp and which dealt in shrimp. His testimony was that plaintiff was charged less than market value of the shrimp. This proof was sufficient.
Affirmed.
BOURG, J., dissents.