691 So.2d 1336 (1997)
HIGHLANDS UNDERWRITERS INSURANCE COMPANY
v.
Willard J. FOLEY, III, et al.
No. 96 CA 1018.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
*1338 Ronald L. Monroe, New Orleans, for Plaintiff/Appellant Highlands Underwriters Insurance Company.
Timothy J. Barbier, Napoleonville, for Defendant/Appellee Willard J. Foley, III.
Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit for insurance premiums.

BACKGROUND
Prior to September 7, 1979, a sole proprietor was not included and could not be included under his workers' compensation insurance policy. However, the workers' compensation law was amended, and a sole proprietor could elect to be covered under the policy.[1]
When the law changed, Simmons & Savoie Insurance Agency, Inc. (Simmons & Savoie) prepared a letter to each of its workers' compensation insureds, notifying them of the change in the law. The letter stated that all new and renewal policies would automatically include the sole proprietor and that an additional premium would be added at the end of the policy period. The additional premium would be calculated, using a flat rate not exceeding $15,600.00, which would be added to the premium basis of the payroll of the sole proprietor. If, however, the sole proprietor elected to be excluded from coverage, the sole proprietor was required to sign an exclusion endorsement, which was enclosed with the letter, and to return the endorsement to Simmons & Savoie.
Beginning sometime before 1979, Willard J. Foley, III (Foley), acting in his capacity as sole proprietor of Willard J. Foley, III Farms, obtained workers' compensation insurance annually through Simmons & Savoie. Each application for insurance was sent to Southeastern Council on Compensation Insurance (Southeastern), which would assign an insurance company to provide the requested coverage for Foley.
On or about December 5, 1989, Foley applied, through Simmons & Savoie, for workers' compensation coverage. The application was signed by Foley. The application, under Section IV, question number 4, states "[i]f sole proprietorship, to be exempt?" The box next to the word "No" contained an "x." Southeastern received the application and assigned Highlands Underwriters Insurance Company (Highlands) to provide the requested coverage for Foley.
Pursuant to the assignment, Highlands issued to Foley a policy of workers' compensation and employers' liability insurance for the policy period December 6, 1989, through December 6, 1990. At the end of the policy period, Highlands sent Foley a voluntary audit report, which Foley completed with payroll information and returned. Thereafter, Foley received from Highlands an invoice for additional premiums in the amount of $793.00. Foley paid Highlands the additional premiums.

FACTS
Thereafter, Highlands renewed Foley's workers' compensation policy on an annual basis. For the policy period December 6, 1990, through December 6, 1991, policy number WC 205457 was issued to Foley, and, for the policy period December 6, 1991, through December 6, 1992, policy number WC 215907 was issued. Foley did not sign an exclusion endorsement for either policy to indicate that, as a sole proprietor, he, personally, wished to be exempt from workers' compensation coverage. After these policy periods, Highlands performed a final, physical audit and determined that Foley owed additional premiums, totaling $3,328.00, on the two renewal policies. On September 20, 1994, Highlands filed an action against Foley for payment of the additional premiums.
*1339 On November 15, 1995, trial on the merits was held. On January 22, 1996, the court rendered judgment in favor of Foley, finding that he did not owe Highlands the additional premiums. In its reasons for judgment, the trial court indicated that the policies were not expressive of the intent of the parties because Foley did not receive any notification of the proposed modification in coverage for the future renewals and was not notified of the automatic inclusion of the flat rate premium basis of $15,600.00 to each year's reported payroll. Thus, the court found that the ambiguity of the policy and application must be construed against Highlands. Highlands appealed, assigning the following specifications of error:
1. The trial court erred in excluding the testimony of plaintiff's witness and denied plaintiff due process of law.
2. The trial court erred in not finding that the defendant was bound by the acts and omissions of his agent.
3. The trial court erred in finding that plaintiff failed to carry its burden of proof by a preponderance of the evidence.

EXCLUSION OF TESTIMONY
Highlands contends that the trial court abused its discretion in disallowing the testimony of Don Savoie, Foley's insurance agent.
The record reveals that a pre-trial conference was held on August 14, 1995, at which time the court set a trial date for October 11, 1995, and ordered that any new parties be added and all discovery be completed by September 15, 1995. Pre-trial memoranda, listing all witnesses, were filed by Highlands and Foley by September 15, 1995, as ordered. The trial date was thereafter continued until November 15, 1995. On November 10, 1995, by facsimile transmission, Highlands sent the court and Foley's attorney a supplemental pre-trial memorandum, adding Don Savoie as a witness. Thereafter, Foley filed a motion to strike Savoie from the witness list because his name was added without leave of court and without proper, timely notification. Foley also filed a motion in limine, requesting that Savoie's testimony and any exhibits related thereto be excluded. At trial, the court refused to allow Savoie to testify for the following reasons:
The Court is however going to deny and will not allow Mr. Don Savoy (sic) to testify in this matter. He was added as a witness by fax on November 10th. This matter has been set for trial for quite a long period of time. In fact, it's been set since August. The Court feels that Mr. Monroe had more than ample time to add him. To add him on November 10th is only doing, and the only manner to do so would be to surprise or catch off guard the defense counsel in this matter. The Court is firmly against any sandbagging or any trial by ambush. If The (sic) Court would allow Mr. Savoy (sic) to testify, this would amount to a trial by ambush in allowing the plaintiffs at the last minute five days before the matter was to be tried allowing them to add a witness and to testify that has not been previously disclosed to the defendant, and The (sic) Court will not allow him to testify.
The jurisprudence provides that an orderly disposition of each case (and of the entire docket) and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action. Futrell v. Scott Truck and Tractor Company of Louisiana, Inc., 629 So.2d 449, 453 (La.App. 3rd Cir.1993), writ denied, 94-0327 (La. 3/25/94); 635 So.2d 232; Bourg Dry Dock & Service Co., Inc. v. Lombas Industries, Inc., 393 So.2d 203, 204 (La.App. 1st Cir.1980). The pre-trial order controls the subsequent course of action, but it can be modified at trial to prevent substantial injustice. LSA-C.C.P. art. 1551. Although the trial court is vested with much discretion to amend its pre-trial order, this discretion must be exercised to prevent substantial injustice to the parties who have relied on the pre-trial rulings and structured the preparation and presentation of their cases accordingly. Stockstill v. C.F. Industries, Inc., 94-2072, p. 7 (La.App. 1st Cir. 12/15/95); 665 So.2d 802, 810, writ denied, 96-0149 (La. 3/15/96); 669 So.2d 428; Bordelon v. Drake, 578 So.2d 1174, 1178-79 (La.App. 5th Cir. *1340 1991). Only upon a showing of an abuse of that discretion should the appellate court intervene. Regional Transit Authority v. Lemoine, 93-1896, 93-1897 p. 8 (La.App. 4th Cir. 11/16/95); 664 So.2d 1303, 1307, writ denied, 96-0412 (La. 3/29/96); 670 So.2d 1234; Pino v. Gauthier, 633 So.2d 638, 648 (La.App. 1st Cir.1993), writs denied, 94-0243, 94-0260 (La. 3/18/94); 634 So.2d 858, 859.
After reviewing the record in this matter, we find that Highlands had ample time to list its witnesses in accordance with the court's pre-trial order. Therefore, under the circumstances presented in this case, we find no abuse of discretion in the trial court's refusal to allow Highlands to add a witness five days before trial.[2]

ADDITIONAL INSURANCE PREMIUMS
Highlands contends that the trial court erred in finding that it failed to prove that, under the terms of the insurance policy, Foley owed the additional premiums.
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Ledbetter v. Concord General Corp., 95-0809, p. 3 (La.1/6/96); 665 So.2d 1166, 1169, amended, 95-0809 (La.4/18/96); 671 So.2d 915; Dunn v. Potomac Insurance Company of Illinois, 94-2202, p. 5 (La.App. 1st Cir. 6/23/95); 657 So.2d 660, 663. Judicial responsibility in interpreting contracts is to determine the common intent of the parties. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911, p. 5 (La. 1/14/94); 630 So.2d 759, 763.
The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. LSA-C.C. art.2047; Ledbetter v. Concord General Corp., 665 So.2d at 1169. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Epps v. City of Baton Rouge, 604 So.2d 1336, 1349 (La.App. 1st Cir.1992). An insurance contract should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Coates v. Northlake Oil Company, Inc., 499 So.2d 252, 255 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987). If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Sanders v. Ashland Oil, Inc., 94-1469, p. 6 (La.App. 1st Cir. 5/5/95); 656 So.2d 643, 647, writ denied, 95-1797 (La.11/3/95); 661 So.2d 1389.
In such case, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Amoco Production Company v. Fina Oil & Chemical Company, 95-1185, p. 12 (La.App. 1st Cir. 2/23/96); 670 So.2d 502, 511, writ denied, 96-1024 (La.5/31/96); 673 So.2d 1037. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the instrument. Martin Exploration Company v. Amoco Production Company, 93-0349, p. 5 (La.App. 1st Cir. 5/20/94); 637 So.2d 1202, 1205, writ denied, 94-2003 (La.11/4/94); 644 So.2d 1048.
When there is uncertainty or ambiguity as to the terms of a written contract because its provisions are susceptible to more than one interpretation, or when the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show *1341 the intention of the parties. Martin Exploration Company v. Amoco Production Company, 637 So.2d at 1205. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art.2045. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Kuswa & Associates, Inc. v. Thibaut Construction Co., Inc., 463 So.2d 1264, 1266 (La.1985); Commercial Bank & Trust Company v. Bank of Louisiana, 487 So.2d 655, 659 (La. App. 5th Cir.1986). A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053; Allen v. Burnett, 530 So.2d 1294, 1301 (La.App. 2nd Cir.1988).
Whether a contract is ambiguous or not is a question of law. Spohrer v. Spohrer, 610 So.2d 849, 853 (La.App. 1st Cir.1992); Myers v. Myers, 532 So.2d 490, 494 (La.App. 1st Cir.1988); Aycock v. Allied Enterprises, Inc., 517 So.2d 303, 309 (La. App. 1st Cir.1987), writs denied, 518 So.2d 512, 513 (La.1988). However, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed, unless manifest error is shown. See G/O Enterprises, Inc. v. Mid Louisiana Gas Company, 444 So.2d 1279, 1285-86 (La. App. 4th Cir.), writ denied, 446 So.2d 318 (La.1984); Universal Iron Works, Inc. v. Falgout Refrigeration, Inc., 419 So.2d 1272, 1274 (La.App. 1st Cir.1982).
In the instant case, the trial court made a legal determination that the policies at issue were ambiguous and a factual determination that the policies were not expressive of the intent of the parties because Foley did not intend to be covered personally by the policies. Accordingly, the threshold issue on appeal is whether the terms of the insurance policies at issue are ambiguous as found by the trial court. If the language of the policies is explicit and unambiguous, the contract must be enforced as written. However, if the language of the policy provisions is unclear and ambiguous, the contract must be construed in light of the intent of the parties.

A. Ambiguity

The "GENERAL SECTION" of Highlands' policies defines "Who Is Insured" as follows:
You are insured if you are an employer named in item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.
Item one of the information pages of the policies provides that the insured is Willard J. Foley, III, d/b/a Willard J. Foley, III Farms. The information pages also indicate that the insured business is a sole proprietorship.[3]
Part five of the policies addresses policy premiums and how the premiums will be determined. It provides, in pertinent part, as follows:
A. Our Manuals
All premiums for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manual and apply the changes to this policy if authorized by law or a government agency regulating this insurance.
* * * * * *
C. Remuneration
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
1. all your officers and employees engaged in work covered by this policy; and
2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy.
* * * * * *

*1342 E. Final Premium
The premium shown on the Information Page, Schedules, and Endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.
* * * * * *
G. Audit
You will let us examine and audit all your records that relate to this policy.... We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium.
A review of the policies reveals that the provisions specifically address who is an insured when the employer is a partnership, but the policies do not address who is an insured when the employer is a sole proprietorship. Moreover, the policies do not indicate that (1) if the owner of a sole proprietorship does not specifically exclude himself from coverage, he automatically will be included; or (2) if the owner of the sole proprietorship does not exclude himself from coverage, he will be charged an additional premium at the end of the policy period, which will be calculated by adding a flat rate premium basis of $15,600.00 to each year's reported payroll.
After carefully reviewing the policies at issue herein, we conclude that the trial court correctly found that the policies were not explicit and unambiguous with regard to the automatic inclusion of owners of sole proprietorships and the additional premiums resulting therefrom. Therefore, we will review the entire record to determine whether the trial court erred in determining that the parties did not intend for Foley to be included under the policy.

B. Intent

The record reveals that, at trial of this matter, Nellie Landry testified that she had not been employed by Simmons & Savoie for the two years prior to trial, but that she had been employed by the agency in September of 1979 as its office manager. Landry identified a letter, dated September 20, 1979, and addressed to Foley, as a letter, that she composed, typed, and signed for Simmons & Savoie. Landry testified that the agency sent the letter to each of its workers' compensation insureds to notify them of a change in the law regarding workers' compensation coverage. Landry explained that the law provided that each insured had to sign an exclusion endorsement to be exempt from coverage under its workers' compensation policy. If an exclusion endorsement was not signed by the insured, the insured automatically would be covered under the policy. According to Landry, an exclusion endorsement was included with each letter and was to be signed and returned to Simmons & Savoie. Landry stated that two letters were sent to Foley, but he never returned a signed exclusion endorsement. However, Landry testified that the letters were not sent by certified mail, and she could not testify that Foley ever received the letters.
Huey Holmes testified that he is employed as Highlands' audit manager. Holmes indicated that Foley applied for workers' compensation coverage through the Louisiana Assigned Risk Plan, and Highlands was assigned to provide the coverage. Holmes stated that Highlands' information page states that the policy premiums will be determined by Highlands' Manual of Rules, Classifications, Rates, and Rating Plans. According to Holmes, the manual provides that "sole proprietors are covered under the law in Louisiana and may elect not to be subject to the law. To exclude such sole proprietors attach the standard partners, officers, and other exclusion endorsement." The manual also provides that "[P]remium determination for partners and sole proprietors in accordance with basic manual, 15,600." Holmes *1343 testified that no exclusions were signed by Foley. However, Holmes acknowledged that the policies themselves do not indicate that sole proprietors can elect not to be covered and can exclude themselves or that automatic inclusion will cause additional premiums to be added at the end of the policy period, which will be calculated using $15,600.00 as a flat rate added to the sole proprietor's payroll. The only indication of the automatic inclusion and additional premiums is in the basic manual, which Holmes testified was never sent to Foley.
Holmes testified that, for the policy period 1989-1990, Foley was sent an invoice, indicating that Foley owed additional premiums, in the amount of $793.00, which Foley paid. However, Holmes acknowledged that nothing on the invoice indicated that Foley was personally covered for that period. Particularly, the invoice did not indicate that $15,600.00 was being added to Foley's payroll figure; it merely exhibited a total figure (Foley's payroll figure plus the $15,600.00). Holmes testified that Highlands certainly could have broken down the figure to show that $15,600.00 was being added to Foley's payroll figure.
Willard Foley testified that he was never advised that, as a sole proprietor, he automatically would be covered by the workers' compensation policy, unless he signed an exclusion endorsement and returned it to Simmons & Savoie. Foley could not recall receiving a letter from Simmons & Savoie in 1979, or any time thereafter, regarding the change in the law. Foley testified that he did not intend to be personally covered under the workers' compensation policies, and that, to his knowledge, he was not personally covered. Foley stated that he made no personal claims under the policies while they were in effect and that he had his own personal disability and hospitalization insurance during those periods. Foley testified that, although the application for insurance indicated that he did not wish to be personally exempt from coverage, he did not complete the application himself. Foley acknowledged signing the application, but could not recall whether he had read it prior to signing. Foley acknowledged that he paid the additional premiums for the 1989-1990 policy period. However, he testified that he did not know what the additional premiums were for, but that he assumed they were related to the payroll of his employees.
After hearing all of the testimony and reviewing all of the evidence, the trial court determined that Foley did not intend to be personally covered under the workers' compensation policy. More specifically, the trial court found as follows:
In summary, the court finds that the plaintiff has failed to carry its burden of proof in this matter by a preponderance of the evidence in that there was no competent evidence submitted that Mr. Foley intended to be covered personally for worker compensation purposes. This court, in viewing the testimony elicited, finds the testimony of Mr. Foley to be credible wherein he stated 1) that he did not wish to be personally covered by worker's compensation insurance, 2) that the application was not prepared by him, 3) that he was not informed of the inclusion of the flat payroll figure for a sole proprietor, and 4) that he did nothing during the policy periods to indicate his knowledge of personal coverage during the periods in question.
We have thoroughly reviewed the entire record in this matter and find that a reasonable factual basis exists for the findings of the trial court. It was Highlands' burden to prove that Foley owed the additional premiums under the terms of the policies at issue. However, Highlands presented no evidence (1) that Foley actually completed the application, indicating that he did not wish to be personally exempt from coverage; (2) that Foley was ever notified of the necessity of an exclusion in order to exempt himself from coverage under the policies; or (3) that Foley actually received the letter prepared and sent by Simmons & Savoie in September of 1979. The trial court found credible Foley's testimony that he did not fill out the application, that he did not intend to be covered, and that he was unaware of his coverage under the policy. The finding that Foley was unaware of the automatic inclusion rule is supported by Holmes' testimony that *1344 the only indication of a sole proprietor's automatic inclusion and charge of additional premiums is set forth in Highlands' basic manual, which was never sent to Foley. The rule is not set forth in the policies themselves. In addition to our conclusion that a reasonable factual basis exists for the trial court's finding that Foley did not intend to be covered by the policies, our review of the entire record reveals no manifest error.[4]

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Highlands.
AFFIRMED.
NOTES
[1] By La. Acts 1979, No. 465, § 1, LSA-RS. 23:1035 was amended to provide, in pertinent part, as follows:

The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his own trade, business, or occupation, or in the course of his employer's trade, business, or occupation.
[2] We note that, in brief, Highlands points out that Foley failed to conduct any discovery prior to trial and that, therefore, Highlands should have been allowed to add its witness. However, Foley's decision not to conduct any pre-trial discovery has no relation to the trial court's decision to disallow the testimony of one of plaintiff's witnesses who was added only five days prior to trial.
[3] The information pages provide that the business type is "Individual."
[4] On appeal, Highlands also assigns as error the trial court's failure to find that Foley was bound by the acts of his agent. However, because we have found the policy to be ambiguous, we find it unnecessary to address this issue.