937 So.2d 425 (2006)
Lonnie FONTENOT, Alan LeBlanc and Wayne Thibodaux
v.
DIAMOND B MARINE SERVICES, INC., Zurich Insurance Company & National Union Fire Insurance Company of Louisiana.
No. 2005-CA-0863.
Court of Appeal of Louisiana, Fourth Circuit.
July 26, 2006.
*426 Charles J. Ballay, Adrian A. Colon, Jr., Ballay, Braud & Colon, Belle Chasse, LA, for Plaintiffs/Appellants.
John B. Peuler, Gregory L. Ernst, Anthony D'Alto II, Peuler & Ernst, New Orleans, LA, for National Union Fire Insurance Company of Louisiana.
James A. Cobb, Jr., John F. Emmett, Louis G. Spencer, Emmett, Cobb, Waits & Kessenich, New Orleans, LA, for Zurich Insurance Company.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., and Judge LEON A. CANNIZZARO JR.).
CHARLES R. JONES, Judge.
The Appellants, Lonnie Fontenot, Alan LeBlanc and Wayne Thibodaux, seek a review of a district court judgment that found that the excess policy of the Appellee, National Union Fire Insurance Company of Louisiana (hereinafter "National Union"), did not provide their insured, Diamond B Marine Services, Inc. (hereinafter "Diamond"), with coverage, and granted National Union's Motion for Summary Judgment. We AFFIRM.

STATEMENT OF FACTS
The Appellants filed a petition for a declaratory judgment in the 25th Judicial District Court for the Parish of Plaquemines, to collect on a judgment rendered against Diamond in the United States District Court for the Eastern District of Louisiana.[1] The Appellants sought coverage under two insurance policies, primary and excess, for an accident that occurred on March 25, 1999, in which they sustained personal injuries. Diamond was insured by two policies: a primary policy issued by Zurich Insurance Company (hereinafter "Zurich"), which provided coverage of up to $1 million; and an excess policy, (a bumbershoot policy), issued by National *427 Union, which provided excess coverage of up to $4 million in excess of $1 million.
National Union issued to Diamond a renewed bumbershoot policy with effective dates of November 1, 1998 to November 1, 1999. In the policy "Schedule of Vessels" provision was provided excess coverage for the following Diamond vessels: "DIAMOND 7, DIAMOND 8, DIAMOND 101, and DIAMOND 117," and $14 million excess underlying coverage for "L'IL BOB." The policy also included an "Endorsements" provision, adding/deleting specific Diamond vessels from coverage with a corresponding increase/return of premium. The MISS BERNICE, a vessel owned and operated by Diamond, was neither listed in the "Schedule of Vessels" provision, nor was she added for coverage by the "Endorsement" provision.
On March 25, 1999, the MISS BERNICE collided with the CANE RIVER, a vessel owned and operated by Trico Marine Assets, Inc. (hereinafter "Trico"). Since the Appellants aboard the MISS BERNICE incurred personal injury as a consequence of the collision between the vessels, they sought damages against Diamond in the United States District Court for the Eastern District of Louisiana. The Appellants successfully prosecuted their claims against Diamond. The United States Fifth Circuit Court of Appeals also affirmed the judgment. Insurance issues were not raised in the above federal court actions.
Thereafter, the Appellants initiated this lawsuit to collect on the damages rendered against Diamond from both Zurich and National Union. The Appellants and National Union filed cross Motions for Summary Judgment in the district court regarding whether National Union's excess policy provided coverage to Diamond for the Appellants' injuries on the MISS BERNICE.

PROCEDURAL HISTORY
The Appellants demanded payment of the judgment, which totaled approximately $1.1 million with interest and costs, from Diamond and its insurers. Since Diamond's insurers refused to pay the judgment, the Appellants filed a state court claim on August 22, 2003, against Diamond and its insurers, to collect on their judgment. After two years of continuous demands, Zurich finally deposited what they alleged was the balance of its insurance policy limit, $727,063.40, into the registry of the federal court. However, there was still a deficit in the judgment in an amount between $400,000.00 and $500,000.00. National Union refused to pay the deficit. The Appellants and National Union each filed cross motions for summary judgment regarding whether National Union's excess policy provided coverage to Diamond as a result of this accident. The district court granted National Union's Motion for Summary Judgment holding that the excess policy did not provide coverage to Diamond for liability arising from the MISS BERNICE incident. The Appellants filed this timely appeal.

DISCUSSION
The Appellants' sole argument is that the district court erred in holding that National Union's policy issued to Diamond does not provide coverage for the accident involving the Appellants on March 25,1999, on the vessel, the MISS BERNICE.
Because the issue of whether or not National Union's excess policy applies to the accident on the MISS BERNICE is a question of law, we review this issue de novo. Further, appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Indep. Fire Ins. *428 Co. v. Sunbeam Corp., 1999-2181 (La. 2/29/00), 755 So.2d 226; Schroeder v. Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). Summary judgment is favored in Louisiana law. La. C.C.P. art. 966(A)(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, scrutinized equally, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof (in motions for summary judgment) remains with the mover. Bd. of Assessors of the City of New Orleans v. City of New Orleans, XXXX-XXXX, p. 8 (La.App. 4 Cir. 9/25/02), 829 So.2d 501, 506. If the moving party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). A fact is material if it is essential to the plaintiff's cause of action under the applicable theory of recovery and if, without the establishment of the fact by a preponderance of the evidence, plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992).
The National Union Policy No. H0635 is specifically tailored to Diamond's needs. For example, the "Schedule of Vessels" provision included only five vessels, and selected vessels were insured up to $4 million (except for the "L'IL BOB"). Since the policy period was November 1, 1998 to November 1, 1999, the policy was in effect at the time of the collision between the CANE RIVER and the MISS BERNICE on March 25, 1999. The question is, however, whether National Union's policy provided coverage for Diamond's use of the MISS BERNICE even if it was not listed in the policy.
The regulation and interpretation of insurance policies are primarily governed by state law. See Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 337, 75 S.Ct. 368, 99 L.Ed. 337 (1955); Ingersoll-Rand Fin. Corp. v. Employers Ins. Co. of Wausau, 771 F.2d 910 (5th Cir.1985). In Louisiana, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., XXXX-XXXX, p. 3 (La.6/27/03), 848 So.2d 577, 580. The court's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. Id.; La. C.C. art. 2045.
To ascertain the common intent of the parties, one must look at the language of the insurance policy. See Peterson v. Schimek, XXXX-XXXX, p. 3 (La.3/2/99), 729 So.2d 1024, 1028. The meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. Highlands Underwriters Ins. Co. v. Foley, 96-1016 (La.App. 1 Cir. 3/27/97), 691 So.2d 1336, 1340, citing La. C.C. art. 1848. Conversely, the use of extrinsic evidence is proper, where an insurance contract is found to be ambiguous after examination of the four corners of the instrument. Id. Thus, where there is uncertainty as to the terms of a written contract, because its provisions are susceptible to more than one interpretation or when the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show *429 the intention of the parties. Id., citing La. C.C. art. 2045.
When the language of an insurance policy is clear, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent. Id.; Adams v. Unione Mediterranea Di Sciorta, 220 F.3d 659, 663 (5th Cir. 2000). When policy provisions are ambiguous, they are generally construed against the insurer in favor of coverage. La. C.C. art. 2056; Cadwallader, 848 So.2d at 580; Carrier v. Reliance Ins. Co., 1999-2573, p. 12 (La.4/11/00), 759 So.2d 37, 43; La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 764.
Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La. C.C. art. 2047; Peterson, 729 So.2d at 1029. In addition, an insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. Id. In other words, one portion of the policy should not be construed separately at the expense of disregarding other provisions. Id., citing La. C.C. art. 2050.
The Appellants argue that the district court should have recognized that the Appellants' judgment is against Diamond and not against the MISS BERNICE; in other words, they argue that since Diamond is "legally liable to pay" the judgment and it is enlisted in the "Schedule of Insureds," National Union should provide coverage for the judgment debtor, Diamond. However, while Diamond is legally bound to pay the judgment, National Union is not obliged to provide coverage for an incident arising from the MISS BERNICE collision, since they were not paid a premium to do so. Conversely, if National Union were paid to provide an excess policy coverage for liability arising from the MISS BERNICE collision, then they would have to do so in accordance with the insuring agreement. Therefore, even though the judgment is against Diamond, liability for this incident does not automatically transfer to National Union.
Additionally, the Appellants argue that if the underlying Zurich policy provides coverage, then the National Union policy is also triggered according to the policy language. They cite the insuring agreement between National Union and Diamond to support their argument. The agreement states that National Union will indemnify Diamond for all "Protection and Indemnity (marine)" policy claims "of whatever nature including those covered by the underlying insurances." National Union specifically insured only those selected vessels enlisted in the "Schedule of Vessels" provision and the vessels added by the "Endorsements" provision.
The terms of an insurance contract must be interpreted consistently so as not to render portions of the policy as of no significance, surplusage, or meaningless. Hanover Petroleum Corp. v. Tenneco, Inc., 521 So.2d 1234, 1238 (La.App. 3 Cir.1988); Gulf Enter., Inc. v. Md. Cas. Co., 267 So.2d 733, 735 (La.App. 4 Cir. 1972). Had all liabilities arising from every vessel Diamond owned been covered by National Union, this would render the "Schedule of Vessels" and the "Endorsements" provisions meaningless because these were included to limit their exposure to liability. Thus, the fact that the underlying Zurich policy provided coverage is not an issue in consideration of whether National Union policy was triggered or not.
The Appellants further contend that if only five vessels were to be covered and National Union expected to limit their exposure to liability, they should have clearly stated the vessel "exclusion" somewhere in *430 the policy. They cite Smith v. Reliance Ins. Co. of Ill., 01-888 (La.App. 5 Cir. 1/15/02), 807 So.2d 1010, 1014, to support their argument that an insurer seeking to avoid coverage through summary judgment must prove that the exclusion applies to preclude coverage. In Smith, the court addressed the issue of whether the insurer can use an ambiguous exclusion to avoid coverage. Id. However, the facts of the case sub judice are distinguishable from those in Smith because there is no ambiguous exclusion herein. The MISS BERNICE is not listed in "Schedule of Vessels," nor in any of the "Endorsements" provisions. Thus, the facts are sufficient to show that the parties did not intend the MISS BERNICE to be covered by the excess policy.
Finally, the Appellants argue that it is absurd to consider that Diamond desired to be insured on only five vessels but chose to be vulnerable to personal injuries on all the other owned vessels. An excess policy is an optional coverage. There can be numerous reasons why Diamond did not purchase an excess policy for the MISS BERNICE. For whatever reason, Diamond decided to have less insurance coverage on the MISS BERNICE.
In sum, because the language of the policy is clear and unambiguous, the contract is enforceable as written.
Furthermore, with regards to whether National Union was prejudiced by a late notice of personal injury claim is not ripe for us to review since it was not raised in the district court.

DECREE
For the reasons stated herein, we affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] Zurich Insurance Company also filed an appeal regarding a separate issue which was dismissed by this Court because the plaintiffs and Zurich Insurance Company settled all claims between them.