| | | |
|---|---|---|
| STATE OF LOUISIANA, DIVISION OF ADMINISTRATION, OFFICE OF COMMUNITY DEVELOPMENT - DISASTER RECOVERY UNIT | * | NO. 2022-CA-0425 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| VERSUS | | STATE OF LOUISIANA |
| | * | |
| STEPHANIE B. POREE A/K/A STEPHANIE BROOKINS POREE | | |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-12622, DIVISION "B-5"
Honorable Rachael Johnson,
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

Mary Catherine Cali
John Carroll Walsh
Caroline M. Tomeny
William J. Wilson
John C. Conine, Jr.
Hunter N. Farrar
Drew D. Lyons
SHOWS CALI & WALSH, LLP
628 St. Louis Street
P.O. Drawer 4425
Baton Rouge, LA 70802

      COUNSEL FOR PLAINTIFF/APPELLEE

Christopher H. Szeto
Ian G. Dunbar
THE LAW OFFICE OF CHRISTOPHER SZETO
8131 Plum Street, Suite 1
New Orleans, LA 70118

      COUNSEL FOR DEFENDANT/APPELLANT

**JUDGMENT REVERSED; EXCEPTIONS REMANDED**

**DECEMBER 20, 2022**

*SCJ*
*RLB*
*RML*

Defendant, Stephanie Poree, appeals the trial court's September 22, 2022 judgment granting the motion for summary judgment filed by the State of Louisiana, Division of Administration, Office of Community Development, Disaster Recovery Unit (hereinafter "the State"), and ordering judgment in favor of the State and against Ms. Poree in the amount of $37,500.00, plus legal interest.  In addition to this appeal, Ms. Poree filed five peremptory exceptions for the first time in this Court.

Upon our *de novo* review of the record and in light of applicable law, we find genuine issues of material fact remain that preclude summary judgment at this time, and we reverse the trial court's September 22, 2022 judgment.  In addition, we remand this matter to the trial court for a trial on the peremptory exceptions filed in this Court.

**FACTS AND PROCEDURAL BACKGROUND**

Ms. Poree owns a residential home located at 97 Morrison Court in New Orleans that sustained devastating losses as a result of the impact of Hurricane Katrina, on or about August 29, 2005.

Due to the widespread devastation throughout New Orleans from Hurricane Katrina, the State instituted the federally funded Road Home Program to award grants to eligible homeowners in the affected areas to assist them in repairing their homes, elevating their homes, and implementing mitigating measures.

In May 2007, Ms. Poree received an initial Road Home compensation grant in the amount of $60,664.76, which did not include an elevation grant.[1] Subsequently, in October 2008, Ms. Poree received a Road Home Elevation grant in the amount of $30,000; and, in connection therewith, Ms. Poree signed an Elevation Incentive Agreement ("EIA"). The EIA states, in part, that the homeowner agrees that within three years of the date of the signing of the EIA, the elevation of the home will be at or above the Advisory Base Flood Elevations ("ABFEs") published by the Federal Emergency Management Agency ("FEMA").

In June 2011, Ms. Poree received a final Road Home grant for Individual Mitigation Measures in the amount of $7500.00, for which she signed a separate Individual Mitigation Measures Agreement ("IMMA"). The IMMA states, in part, the homeowner agrees that, within three years of the date of the agreement, she will

---

[1] The record includes several exhibits pertinent only to the initial Compensation grant, which Ms. Poree received in May 2007. One exhibit includes a Benefit Selection Form, which indicates that Ms. Poree was eligible for an Elevation Compensation grant but that she elected not to elevate her home and receive such Elevation Compensation.

use "best efforts in accomplishing such activities that stand to mitigate losses from future damages resulting from hurricanes and similar natural disasters," such as installing window protection and installing hurricane straps/clips.

On December 17, 2018, the State filed a petition against Ms. Poree, alleging she breached the EIA and IMMA and seeking the repayment of grant funds in the amount of $37,500.00 plus legal interest, attorney fees, and costs.[2]  After personal service on Ms. Poree was attempted and failed, the State filed a motion to appoint curator, which was granted on February 2, 2021.  On March 18, 2021, the curator filed an answer on behalf of Ms. Poree, and, on April 19, 2021, the curator filed a note of evidence stating his attempts to locate and contact Ms. Poree.

On June 2, 2021, the State filed its motion for summary judgment seeking judgment against Ms. Poree for the full amount demanded in the petition.  No opposition was filed on behalf of Ms. Poree.  On August 24, 2021, the trial court held the hearing on the State's motion for summary judgment, at which the State presented argument in support of its motion but the appointed curator for Ms. Poree did not present any argument in opposition.  The trial court granted the State's motion for summary judgment and signed the written judgment on September 22, 2021.

---

[2] Prior to filing the petition, the record reflects that the State mailed several notices to Ms. Poree stating that she was not in compliance with the EIA and IMMA agreements and that she was obligated to repay the amounts of both grants for failure to comply.

Ms. Poree filed a motion for new trial, which the trial court denied on March 3, 2022.  Ms. Poree then filed this timely appeal of the trial court's September 22, 2022 and March 3, 2022 judgments.

## DISCUSSION

Ms. Poree raises three assignments of error on appeal, but we find our *de novo* review of the State's motion for summary judgment dispositive of the appeal and pretermit discussion of the other assignments of error.[3]

### *Motion for Summary Judgment*

An appellate court reviews a ruling on a motion for summary judgment under the *de novo* standard of review, applying the same standard as the trial court, and the appellate court does not analyze the facts and evidence with deference to the judgment of the trial court or its reasons for judgment.  *Precept Credit Opportunities Fund, L.P. v. Elmore*, 21-0502, p. 3 (La. App. 4 Cir. 4/20/22), 338 So.3d 87, 89-90 (quoting *Smith v. State*, 18-0197, p. 3 (La. App. 4 Cir. 1/9/19), 262 So.3d 977, 980).  Therefore, in accordance with La. C.C.P. art. 966(A)(3), "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."  A genuine issue is a triable issue, as to which reasonable persons could disagree, and facts are material when they "may insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *FMC Enterprises,*

---

[3] Ms. Poree also argues that the trial court erred in failing to declare the EIA void as an absolute nullity, and that trial court erred in denying her motion for new trial.

*L.L.C. v. Prytania-St. Mary Condominiums Ass'n, Inc.*, 12-1634, p. 6 (La. App. 4 Cir. 5/15/13), 117 So.3d 217, 222.

"The only documents that may be filed in support or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4). In meeting the burden of proof, unsworn or unverified documents attached to a motion for summary judgment are not self-proving and will not be considered as competent summary judgment evidence. *Williams v. Memorial Med. Ctr.*, 03-1806, p. 14 (La. App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053. Only documents which are properly authenticated by an affidavit or deposition to which they are attached may be considered as supporting documentation on a motion for summary judgment. *Dowdle v. State through Dep't of Culture, Recreation, and Tourism*, 18-878, p. 4 (La. App. 3 Cir. 5/15/19), 272 So.3d 77, 81 (quoting Official Comment (c of 2015) to La. C.C.P. art. 966). In addition, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." La. C.C.P. art. 967(A).

"The burden of proof rests with the moving party and all doubts should be resolved in the non-moving party's favor." *Carmbat v. City of New Orleans Police Dept.*, 14-0810, p. 4 (La. App. 4 Cir. 2/4/15), 160 So.3d 1031, 1034 (citing *Gailey v. Barnett*, 12-0830, p. 4 (La. App. 4 Cir. 12/5/12), 106 So.3d 625, 627-28). Thus, any doubt regarding a material issue of fact "must be resolved against granting the

motion and in favor of a trial on the merits." *FMC Enterprises*, 12-1634, pp. 6-7, 117 So.3d at 222-223 (citing *Windham v. Murray*, 06-1275, p.3 (La. App. 4 Cir. 5/30/07), 960 So.2d 328, 331).

In this case, the State's motion for summary judgment asserts that there is no genuine issue of material fact that Ms. Poree breached the EIA and the IMMA and that she was obligated to repay the full amount of both grants to the State. In order to carry its burden of proof on this motion for summary judgment, the State must prove it can satisfy the three essential elements of its breach of contract claim: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 10-0986, pp. 14-15 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09; *see also*, *1100 South Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 5 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1216 ("essential elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages."). Since there are two separate agreements, the EIA and the IMMA, which the State argues Ms. Poree breached, we must consider the evidence submitted to support each breach of contract claim.

Elevation Incentive Agreement

The State argues that Ms. Poree received a $30,000.00 elevation incentive grant from the State in October 2008, and that, by signing the EIA, she affirmatively obligated herself to (1) elevate her home in accordance with the elevation provisions set forth in the EIA; (2) comply with the elevation provisions within three years of

the date of the EIA; (3) repay the entire amount of the EIA grant if she failed to comply with the elevation provisions within three years. Regarding her breach of the agreement, the State argues that Ms. Poree did not elevate her home to the applicable ABFE within three years of executing the EIA. Finally, the State argues that, after the expiration of the three year deadline to elevate her home, Ms. Poree failed to repay the full amount of the EIA grant and now owes the State that amount plus attorney fees and costs.

In support of its motion for summary judgment, the State submitted the affidavit of Jeff Haley, the Chief Operating Officer of the Office of Community Development, Disaster Recovery Unit and twenty-three exhibits. In the affidavit, Mr. Haley attests, in pertinent part, to the following: he has care, custody, and access to the Road Home grant file of Ms. Poree; he is familiar with Ms. Poree's Road Home grant file; the attached documents are the records kept by the State in connection with that grant file; and verifying and certifying each attached document.[4] The following relevant documents are attached to Mr. Haley's affidavit:

- A "Final Disbursement Statement" from First American Title Insurance Company indicating that a $30,000.00 disbursement was paid to Ms. Poree for "LRH-Elevation grant." The statement indicates the "Print Date" as October 13, 2008, and includes Ms. Poree's undated signature.

- A "Final Award Acknowledgment Form" signed by Ms. Poree on October 16, 2008, indicating an "Adjustment Disbursement" of $30,000.00 for Elevation.[5]

---

[4] In consideration of our finding that the State failed to meet its burden of proof on summary judgment, we do not address Ms. Poree's argument that Mr. Haley's affidavit is not based upon personal knowledge and he cannot authenticate the attached documents.

[5] A separate exhibit is also entitled "Final Award Acknowledgment Form" which reflects the "First Closing/Disbursement" for the grant amount of $60,664.76 and the "Second Closing/Disbursement" for the grant amount of "$30,000.00/elevation." This form is also signed by Ms. Poree.

- The EIA, which is signed by Ms. Poree but not dated.

- Field Review Report from the Road Home Compliance and Monitoring Department, indicating a field review was completed for Ms. Poree's property on July 7, 2014, and stating the results of that field review.

As previously noted, the curator appointed to represent Ms. Poree did not file an opposition to State's motion for summary judgment. On appeal, Ms. Poree argues that the obligations under the EIA do not explicitly require elevating the home, and that its terms allow for the grant funds to be used for repairs or rebuilding or elevating the home. Due to ambiguity in the obligations imposed and undertaken, Ms. Poree argues that there are genuine issues of fact concerning the intent of the contract and the consent of the parties that must be resolved in favor of the obligor, Ms. Poree, and that precludes granting summary judgment in favor of the State. *See* La. C.C. arts. 2056 and 2057;[6] *Pollard v. Schiff*, 13-1682, p. 10 (La. App. 4 Cir. 2/4/15), 161 So.3d 48, 55.

To determine the obligations undertaken, we look to the language of the EIA that Ms. Poree signed. "If the words of a contract are clear, unambiguous, and lead to no absurd consequences, we may not look beyond the contract language to

---

[6] La. C.C. art. 2056 provides:
> In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
> A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.

La. C.C. art. 2057 provides:
> In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
> Yet, if doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether oblige or obligor.

determine the true intent of the parties." *Rousset v. Smith*, 14-1409, p. 6 (La. App. 4 Cir. 9/23/15), 176 So.3d 632, 637 (citing La. C.C. art. 2046).

The stated purpose of the Elevation Incentive grant is "to compensate the Homeowner for damage to his home caused [sic] incurred by the Homeowner(s) due to Hurricanes Katrina in August 2005 and/or Rita in September 2005 and the diminishment of equity resulting from the need to elevate the home"; and the grant received through the EIA "is to provide an incentive to the Homeowner to elevate [her] home to a level that meets or exceeds the Advisory Base Flood Elevations (ABFE's) established by the Federal Emergency Management Agency as of the date of the [EIA]." The "[EIA] Conditions" set forth in Section 4 of the agreement read, in pertinent part, as follows:

> By accepting this grant provided through the [EIA], I agree that:
>
> a. Flood Elevation Compliance: Within three years of the date of this [EIA], the elevation (height) of the home on the above Property will be at or above the [ABFE] published by FEMA. Where no ABFE has been published for the Property, the property must be elevated to meet the Base Flood Elevation (BFE) shown on the community's legally adopted Flood Insurance Rate Map (FIRM) floodplain regulatory map, plus any freeboard required by local ordinance. ABFE and BFE are those elevations in effect on the date this Agreement was signed. By accepting the Elevation Incentive, I assert that when the home was damaged by Hurricane Katrina or Rita, its elevation was lower than the elevation required under this Agreement. I understand that to comply with this paragraph, I must elevate my home to be at or above the elevation required by this Agreement even if the authority having jurisdiction of building code enforcement is not requiring elevation of the home. Adoption of a new FIRM by the community subsequent to signing of this Agreement, which new FIRM may have BFEs higher or lower than the ABFE or BFE in effect on the date of signing, will not change the elevation required by this Agreement.
>
> b. Covenant as to Compliance with Building Codes/Manufactured Housing: (i) Repair. If the existing structure located on the Property

was not destroyed by Hurricane Katrina and/or Rita and has been fully or partially repaired as of the Effective Date, the completed repairs shall conform to the minimal building codes . . . . Any further repairs commenced on or after the Effective Date shall conform to the minimum standards set by . . . in effect at the time of the repair. (ii) Rebuilding. If a structure on the Property was destroyed by Hurricane Katrina and/or Rita, or if there is hereafter a tearing down or destruction of a structure located on the Property, any rebuilding of a new structure shall conform to the minimum standards set by . . . .

c. Obligation to Return Elevation Incentive for Failure to Comply: If the home on the Property does not meet or exceed the applicable ABFE's or BFE's by three years from the date of this Elevation Incentive Agreement, the entire amount of my Elevation Incentive must be repaid to the State of Louisiana.

\* \* \*

e. Final Disbursement of Road Home Funds/Waiver of Second Disbursements: I acknowledge that this is my FINAL disbursement of Road Home funds, whether as incentive for me to elevate my home or as a compensation grant or additional grant for damage to my home. Any pending Road Home resolution or appeal proceeding will be discontinued.

From our review of the foregoing language, we find the stated purpose and certain conditions of the EIA to be open to more than one interpretation and, thus, ambiguous. First, we note that the stated purpose of the EIA is "to compensate the Homeowner for damage to his home" and "to provide an incentive to the Homeowner to elevate the home". While we acknowledge that the incentive to elevate the home appears throughout the agreement, the stated purpose also refers to compensation for damage to the home generally. In addition, the EIA conditions in Section 4(b) set forth a covenant to comply with building codes in the repair and rebuilding of the home; and, from a review of the entire agreement, there is no prohibition on the funds being used for such repairs or rebuilding in lieu of elevating the home. Finally, Section 4(e) states an acknowledgement of the disbursement of

funds "whether as incentive for me to elevate my home or as a compensation grant or additional grant for damage to my home", which could be interpreted as allowing the homeowner to decide how to use the funds.

We also note the complete ambiguity regarding the obligation for compliance with the EIA. The State contends that, by signing the EIA, Ms. Poree obligated herself to comply with the elevation provisions within three years of the date of the EIA. First, the EIA in the record reflects no effective date or signing date. Second, the agreement contains no clear terms for determining the homeowner's compliance with elevation provisions.[7]

Where an uncertainty exists as to the terms of the written contract, because the provisions are susceptible to more than one interpretation, parol evidence becomes admissible to clarify the ambiguity or show the intent of the parties. *Succession of Barreca v. Weiser*, 10-0574, p. 16 (La. App. 4 Cir. 11/3/10), 53 So.3d 481, 491 (citing *Highlands Underwriters Ins. Co. v. Foley*, 96-1018, p. 7 (La. App. 1 Cit. 3/27/97), 691 So.2d 1336, 1340). "In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties", which is an issue of fact to be inferred from all of the surrounding circumstances." *Highlands*,

---

[7] The terms of the obligation to comply are ambiguous by failing to specify how the homeowner can or shall prove compliance, or how the State will determine a homeowner's failure to comply. In addition, though we do not reach a discussion of the State's burden to prove the second element of the breach of EIA contract claim—the breach of the obligation, we find no evidentiary support for the State's argument that Ms. Poree failed to elevate her home. The documentation submitted by the State in support of the breach element is the Field Review Report from July 7, 2014, which states, in pertinent part: "Repairs appear to be complete. Unable to determine if structure is elevated to BFE. Elevation appears incomplete. The Homeowner was not interviewed." This document does not establish a failure to comply with specific provisions of the EIA. In addition, the State provides no affidavit from the person who conducted the field review, Garrett Romagossa, to authenticate the document, attest to his qualifications for conducting the field review, or attest to his findings.

96-1018, p.7, 691 So.2d at 1341. And, where an issue of fact must be resolved, the matter is not ripe for summary judgment. *Landis Const. Co., L.L.C. v. St. Bernard Parish*, 14-0096, p. 7 (La. App. 4 Cir. 10/22/14), 151 So.3d 959, 963.

From our *de novo* review, we conclude that genuine issues of material fact remain as to the intent of the parties regarding the obligations undertaken by Ms. Poree in accepting the EIA grant funds. Thus, we find the trial court erred in finding that the State was entitled to summary judgment and repayment of the EIA grant funds.

Individual Mitigation Measures Agreement

We now consider whether the State met its burden of proof on summary judgment on the claim that Ms. Poree breached the IMMA contract. On this claim, the State argues that Ms. Poree received $7,500.00 in grant funds and, by signing the IMMA, she obligated herself to (1) use her "best efforts in accomplishing such activities that stand to mitigate losses from future damages resulting from hurricanes and similar natural disasters;" (2) comply with the IMMA provisions within three years of the date of the Agreement; and (3) repay the IMMA funds if she failed to demonstrate compliance. The State further argues that Ms. Poree failed to demonstrate how she used the grant funds in compliance with the IMMA provisions and failed to repay the funds after the expiration of the three year compliance period, and that Ms. Poree now owes the State the full amount of the IMMA grant plus attorney fees and costs.

12

In support of summary judgment on the IMMA breach of contract claim, the State relied upon the affidavit of Mr. Haley and the following relevant exhibits:

- A "Final Award Acknowledgment Form" signed by Ms. Poree on June 16, 2011, indicating an "Adjustment Disbursement" of $7,500.00 for Individual Mitigation Measures.

- The IMMA, which is signed, but not dated, by Ms. Poree.

- Field Review Report from the Road Home Compliance and Monitoring Department, indicating a field review was completed for Ms. Poree's property on July 7, 2014, and stating the results of that field review.

From our review of the language of the IMMA and the Field Review Report, we find genuine issues of fact remain regarding Ms. Poree's obligations under the IMMA and the State's assertions regarding compliance with the IMMA provisions. Under the conditions of the IMMA, in Section 4(a), the homeowner agrees to the following:

> Within three years of the date of this Agreement, . . ., I will use my best efforts in accomplishing such activities that stand to mitigate losses from future damages resulting from hurricanes and similar natural disasters. Those activities include, but are not limited to: installing window protection, installing hurricane straps/clips, bolting walls to foundation, strengthening doors, anchoring propane tank/heating fuel tank, and elevating the electrical panel, HVAC unit, washer/dryer, furnace and/or water heater.

Based on the non-exhaustive list of activities that a homeowner could perform to accomplish the goal of mitigating future losses, we find the obligations undertaken under the IMMA are open to interpretation. In addition, there are no provisions for how the homeowner can or shall show compliance with the IMMA or for how the State will determine compliance or non-compliance. Moreover, the State did not submit evidence that reflects Ms. Poree's failure to comply with IMMA provisions;

the Field Review Report from the Compliance and Monitoring Department does not include any mention of mitigation measures. Finally, in regards to a breach of the three-year compliance period, there is no effective date or signing date on the IMMA signed by Ms. Poree.

From our *de novo* review, we find genuine issues of fact remain regarding the State's breach of contract claim regarding the IMMA, and we find the trial court erred in finding the State was entitled to summary judgment and ordering Ms. Poree to repay the IMMA grant funds.

Thus, we find the trial court erred in granting the State's motion for summary judgment and rendering judgment in favor of the State and against Ms. Poree for the entire amount of the EIA and IMMA grant funds ($37,500.00) plus interest.

***Peremptory exceptions***

Finally, we briefly address the peremptory exceptions filed by Ms. Poree for the first time in this Court on appeal, pursuant to La. C.C.P. art. 2163, which provides as follows:

> The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.

> If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.

In this Court, Ms. Poree filed: 1) an exception of peremption under La. R.S. 9:2772; 2) an exception of no cause of action; 3) an exception of prescription based on La. C.C. art. 1564; 4) an exception of prescription based on La. C.C. art. 3494; and 5)

14

an exception of prescription based on La. C.C. art. 3499. Ms. Poree seeks a full hearing on these exceptions.

In consideration of this Court's reversal of the judgment granting the State's motion for summary judgment, and in consideration of La. C.C.P. art. 931 allowing for evidence to be introduced at a hearing in the trial court on certain peremptory exceptions, and finding that the record on appeal does not provide the facts necessary for a determination of the merits of the exceptions pleaded, we remand these exceptions to the trial court for hearing and judgment. *See Marable v. Empire Truck Sales of Louisiana, LLC*, 16-0876, p. 8 (La. App. 4 Cir. 6/23/17), 221 So.3d 880, 889 (finding the granting of a motion to remand pursuant to La. C.C.P. art. 2163 is discretionary and that remand is generally not necessary if the merits can be determined from the record on appeal); *Willett v. Premier Bank*, 97-187, p. 10 (La. App. 3 Cir. 6/4/97), 696 So.2d 196, 201 (finding the appellate court has discretion to remand for trial of peremptory exception pleaded for the first time on appeal when the interests of justice require a full hearing).

## CONCLUSION

For the foregoing reasons, we reverse the trial court's September 21, 2022 judgment granting the State's motion for summary judgment and rendering judgment against Ms. Poree in the amount of $37,500.00 plus legal interest. We remand this matter to the trial court for further proceedings, including a trial of the exceptions pleaded in this Court.

**JUDGMENT REVERSED; EXCEPTIONS REMANDED**