## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

---

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1919

AND

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1920

---

(86 South. 561)

No. 24197.

### STATE v. HALABY.

### In re THOMAS.

(Nov. 3, 1920.)

*(Syllabus by the Court.)*

Criminal law ⬤1091(11)—Convicted defendant has right to have all testimony attached to bill of exceptions to overruling motion for new trial raising question as to any evidence sustaining charge.

Where, upon the request of a defendant in a criminal prosecution, all the testimony is permitted to be taken down and transcribed, it becomes a matter of right for him to attach it to a bill of exception to the overruling of a motion for new trial, which raises the question whether there was any evidence at all adduced in support of the charge upon which he was convicted.

Mandamus by William Thomas against the City Court of Hammond, to compel the sign-ing of a bill of exceptions in the case of State v. Navoum Halaby. Alternative writ made peremptory.

Samuel A. Montgomery, of New Orleans, and Clay Elliott, of Amite, for relator.

M. J. Allen, Dist. Atty., R., C. & S. Reid, and Purser & Margruder, all of Amite, for respondent.

### Statement of the Case.

MONROE, C. J. Relator alleges that he was prosecuted in the city court of Hammond upon the charge, brought by Frank B. Thomas:

"That one Navoum Halaby * * * did * * * violate the laws * * * by falsely and fraudulently claiming to be Mr. Thomas, of Hammond, in a business conversation with the manager of Rice, Stix & Co., over the long-distance telephone, in which conversation said Halaby, falsely and fraudulently using affiant's name, sought and obtained information concerning affiant's business relations with the said Rice, Stix & Co. in the handling of Pathé manufactured ar-

ticles, the said Halaby not being the person who had the contract with Rice, Stix & Co., and having no interest in affiant's contract with the said concern, all of which fraudulent acts and misrepresentations are a violation of the laws of the state; * * * said Halaby having previously been convicted of the above described offense," etc.

It is alleged that—

"the issue in the charge and prosecution is whether the surname of your petitioner is Thomas, and whether he had used the same wrongfully and illegally in impersonating Frank B. Thomas, the prosecuting witness, as charged; * * * that he had a right to call himself by his own name; that his name expressed in English, was William Thomas, expressed in Arabic it is Navoum Thomas; that the name of his father was Abram Thomas; that Navoum, in Arabic, is the equivalent of, and stands for, William in English; that Thomas is the same in both English and Arabic; that he was a native of Haleb, a city of Syria, called Aleppo in English; that the word Halabi, written after his surname, Thomas, in his Turkish passport, and his declaration of intention to become a city [citizen] of the United States, * * * is not a part of his name, but is a descriptive, identifying, adjective term, or phrase, which means, in Arabic, that he came from Haleb, or Aleppo; that all the evidence introduced on the trial was to the effect that his name, expressed in English, is William Thomas; the same name, expressed in Arabic, is Navoum Thomas;" that "there was no evidence at all to the contrary, nothing at all to show that his name was otherwise than as claimed; the only question at issue, under the charge and the evidence, was whether it was a violation of the law to call himself by his own name, Thomas, there being another gentleman by the name of Thomas in Hammond."

He further alleges that, at the time of pleading, and prior to the trial, he asked and was granted permission to have all the testimony reduced to writing and a record made thereof, which was done by a stenographer sworn by the judge; that, on the trial, he proved that his name is Thomas, and the state offered no evidence to the contrary; that, as the result of the trial, he was convicted and sentenced to pay a fine of $1,000, or suffer imprisonment for 6 months; that he prayed for a new trial, which being refused, he excepted to that ruling, and reserved and prepared a bill of exception, with all the evidence attached, which he presented to the judge for signature; that the judge was willing to sign it with the documentary evidence attached, but declined to do so with the oral evidence, reduced to writing, attached, which evidence is necessary for the purposes of the appeal, in order that this court may be able to determine whether any evidence tending to support the charge as made was offered by the state. And he prays that the judge be ordered to sign the bill as requested.

The respondent judge says in his return that he permitted a stenographer to be sworn and to take the testimony, at defendant's expense, "without officially ordering the same, or making it a part of the official record in the case"; that he refused to send it up with the bill of exception, because this court does not pass upon the facts in criminal appeals; that defendant was requested to leave a copy of the testimony with him, in order that respondent might look over it, and prepare a statement of the facts brought out, which might apply to any exceptions reserved, but that the request was refused, and that he could not send up the testimony, since it is not in his possession; that the matters stated in defendant's application are far from true, and are probably made for the purpose of raising a dispute, in order that the record might not be burdened with a mass of useless documents.

### Opinion.

Our reconsideration of relator's petition suggests some doubt upon the question whether his prayer for relief is sustained by his allegations, more particularly when construed with the charge upon which he is prosecuted,

since, as set forth in the petition, the charge is that he "did * * * violate the laws * * * by falsely and fraudulently claiming to be Mr. Thomas, of Hammond, in a business conversation * * * in which * * * said Halaby, falsely and fraudulently using affiants' name, sought and obtained information," etc., and, after thus setting forth the charge, the petition alleges that—

"The issue in the charge is whether the surname of your petitioner is Thomas, and whether he had used the same wrongfully and illegally in impersonating the prosecuting witness, Frank B. Thomas, as charged," etc.

It is true that he thereafter alleges that "the only question at issue, under the charge and the evidence," was "whether it was a violation of the law to call himself by his own name, Thomas; there being another gentleman by that name in Hammond." But the charge speaks for itself, and, so speaking, says that he used the name "Thomas," which (whether borne by him or not) is borne by the prosecuting witness, "falsely and fraudulently," and thereby sought and obtained information concerning the business of the affiant, in which he has no interest.

But, again, he further alleges "that all the evidence introduced on the trial was to the effect that his name, expressed in English, is William Thomas; the same name expressed in Arabic is Navoum Thomas; there was no evidence at all to the contrary; nothing at all that his name was otherwise than as claimed; and the return of the respondent judge does not seem to deny that allegation, save in the general averment "that the matters stated" in relator's application "are far from true," etc., and the reason assigned by him for refusing to send up the testimony called for (i. e., "because this court does not pass upon the facts in criminal appeals") is insufficient for the purposes of the question here presented, and if sufficient would be equally applicable to the written evidence, which the judge appears to have been willing that counsel should attach to their bill.

It is also true that this court has jurisdiction, in criminal cases, "on questions of law alone" (Const. art. 85) ; but, as the law requires *some* evidence in order to convict a person charged with an offense, the question, whether *any* evidence was adduced in a given case of conviction is a question of law. If, however, all the evidence adduced upon the trial in such case is not brought up on the appeal, the court is powerless to determine whether that which was omitted may not have borne upon the offense charged, and that being the situation, the General Assembly passed Act 113 of 1896, which will be quoted in full in connection with the following:

In State v. Blassengame, 132 La. 155, 61 South. 219, 222, defendant, charged with murder, offered to prove communicated threats by the deceased against his life, and the testimony was excluded on the ground that no overt act on the part of the deceased had been proved. The bill of exception reserved to that ruling contained the recital that—

"The whole evidence, up to that time, both of the state's and defendant's witnesses, was that the deceased had rushed upon the defendant, and was striking at defendant when he shot him."

But the statement per curiam, attached to the bill, was that—

"There was no overt act on the part of the deceased, and there was no rushing of the deceased at the defendant."

Counsel for defendant then "asked leave to have all the evidence taken down to show an overt act, * * * so that the evidence might be annexed to a bill of exception,"

which request the court refused, for the reasons that (quoting, in part, from the excerpt as contained in the opinion of this court):

"The question whether there was an overt act on the part of the deceased against the defendant had to be determined by considering all, or practically all, of the evidence of the 16 witnesses who had been examined in chief, and the evidence of defendant's 7 witnesses who had up to that time been examined, and at the time of the examination of those 23 witnesses no bill of exception had been reserved on this point, and no request at the time had been made to have the evidence bearing on the point taken down."

The trial judge failed, under the circumstances, to see how the provisions of Act 113 of 1896 could be applied, and did not feel that they required that the evidence should be heard again, in order that it might be taken down and annexed to bills of exception.

"It will thus be seen," said this court, in the opinion on the appeal, "that, in a matter of vital importance, the learned trial judge and the counsel for defendant differ radically as to whether a certain fact was established by the evidence, and, if the matter should stand as it is, this court would feel obliged to accept the conclusion of the judge on that subject. Whether it should or should not be accepted depends upon the interpretation to be placed on Act 113 of 1896, which reads:

"'That on the trial of all criminal cases in this state, appealable to the Supreme Court, *when an objection shall be made and a bill of exceptions reserved, the court shall, at the time and without delay, order the clerk to take down the facts upon which the bill has been retained,* which statement of facts shall be preserved among the records of the trial; and, if the case be appealed, the clerk shall attach to the bill of exceptions a certified copy thereof, which shall be taken by the appellate court as a correct statement upon which the exception is based.'"

After calling attention to the language thus italicized by it, the court proceeds as follows:

"Interpreting that language, this court has several times decided that a defendant in a criminal prosecution cannot, as a matter of right, demand at the beginning of a trial, or at any time before he makes an objection and reserves a bill of exception, that 'the facts' thus referred to shall be taken down. State ex rel. Haab v. Judge, 104 La. 63, 28 South. 902; State v. Elia, 108 La. 554, 32 South. 476; State v. Craft, 118 La. 124, 42 South. 718. * * *

"It is, however, the evident purpose of the statute in question to make the appeals, 'in all criminal cases * * * appealable to the Supreme Court,' effective as to the rulings of the trial judges on the questions of law presented to them, by a provision whereby this court may be enabled to review the conclusions of said trial courts on the questions of fact upon which such rulings are based. It is equally evident that it could not have been the intention of the lawmakers to authorize the clerk to 'find the facts' (which means to determine and declare the facts that have been established by the evidence—a judicial function which could not be discharged by the clerk), since the statute merely requires the judge to order the clerk to 'take down the facts upon which the bill has been retained,' which facts, as we interpret the law, consist of the testimony offered, the objection thereto, and the ruling upon the objection. But it may, and is most likely to, happen that much of the testimony as to an overt act * * * is elicited from the state witnesses, who are called to the stand at the beginning of the trial and before any occasion or opportunity is presented to the defendant, charged with the killing, to offer any testimony or reserve a bill of exception to its exclusion; and as the law provides for the taking down of the facts only when such opportunity is presented and utilized, and as this court has settled it that the defendant cannot require it to be done before, it follows that, unless he can have the witnesses who have given their testimony recalled, * * * he is deprived of the right which it is the purpose of the law to secure him. The only argument that is (or, so far as we can see, can be) advanced against according to a defendant in such case the right to have the witnesses recalled, is that of inconvenience. * * * On the other hand, if, as we think is the case, the law gives to a defendant * * * the right to present to this court, on appeal, the evidence adduced on a question of fact underlying a vital adverse ruling upon a question of law, the important matter for this court to see to is that he is not

deprived of that right, and it is immaterial how many witnesses it may be necessary to recall in order that he may enjoy it."

In view of the fact that, in the instant case, our learned brother of the district court was not acting in any other than an official capacity when he authorized the taking down of the testimony here in question and thereafter refused to allow it to be attached to the bill of exception, we must assume that, if not actually and at the moment in his possession, it now forms part of the record in the case and is subject to his control.

It is therefore ordered that the alternative writ herein issued be now made peremptory, and the respondent judge ordered to sign the bill of exception, with the testimony attached, as described in relator's petition, without prejudice to his right to add such statement thereto as he may deem appropriate.

O'NIELL, J., concurs in the decree.