# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2023 CA 0343

# VARILE RAE ANN PITRE TUCKER

# VERSUS

# CECELIA CHATFIELD, ET AL

*Judgment Rendered:* **NOV 0 9 2023**

\* \* \* \* \* \* \* \*

Appealed from the
23rd Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Case No. 124,516

The Honorable Alvin Turner, Jr., Judge Presiding

\* \* \* \* \* \* \* \*

| | |
|---|---|
| Jacque B. Pucheu, Jr.<br>Eunice, Louisiana | Counsel for Plaintiff/Appellant<br>Varile Rae Ann Pitre Tucker |
| Samuel P. Baumgartner<br>Travis L. Simmons<br>Covington, Louisiana | Counsel for Defendant/Appellee<br>Homesite Insurance Company |
| Mark R. Pharr, III<br>Lafayette, Louisiana | Counsel for Defendant<br>Cecelia Chatfield |

\* \* \* \* \* \* \* \*

## BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**LANIER, J.**

This is an appeal from a judgment in a dog-bite case granting the motion for summary judgment filed by an insurer and dismissing plaintiff's claims against the insurer with prejudice. For the following reasons, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On January 30, 2019, Varile Rae Ann Pitre Tucker filed suit against Cecelia Chatfield and Homesite Insurance Company ("Homesite"), as the homeowners' insurer of the premises where the incident occurred. Therein, Ms. Tucker alleged that on February 8, 2018, Ms. Chatfield was a resident of 11182 River Highlands Drive, Unit 12B, St. Amant, Louisiana ("Unit 12B") and had care, custody, and control of the property. She further asserted that Ms. Chatfield's grandparents, Douglas and Diana Wade, were the named insureds under the homeowners' policy issued by Homesite.[1] According to Ms. Tucker's petition, Ms. Chatfield lived in Unit 12B with her minor son and the dog who attacked Ms. Tucker, a Great Dane.[2] On the date in question, Ms. Tucker, a resident of Unit 5A in the same condominium complex, left her unit to retrieve her mail at the community mailbox. At the same time, Ms. Chatfield's son was walking the dog in the parking lot of the condominium complex. As alleged by Ms. Tucker, the dog pulled the leash out of the boy's hand and began to run free, eventually knocking her to the ground and causing her to suffer injuries and damages.

Ms. Chatfield and Homesite each filed an answer to the petition, generally denying the allegations therein. Thereafter, Homesite filed a motion for summary

---

[1] The spelling of Mrs. Wade's name is unclear from the record. In the petition, it is spelled "Diana," but it is also spelled "Diane" in the insurance policy and "Dianne" in an affidavit in the record. For purposes of this opinion, we will refer to her as "Diana," as she is referenced in the petition.

[2] The record reflects that at the time of the incident, Ms. Chatfield's two sons, ages nine and seven, were living with her, along with two dogs, both Great Danes.

2

judgment asserting that there was no coverage under the Homesite policy because Ms. Chatfield was not an "insured" under the policy and that Unit 12B did not meet the definition of an "insured location." Ms. Tucker opposed the motion for summary judgment, pointing to special provisions of the policy concerning the death of a person named in the declarations and the resulting coverage afforded to Ms. Chatfield because she had temporary custody of the property.

The motion was heard on October 11, 2022. Following arguments, the matter was taken under advisement. Subsequently, on November 6, 2022, the trial court issued reasons for judgment finding that Ms. Chatfield did not meet the definition of an insured under the policy because she was neither a named insured nor a resident relative of Diana Wade. On January 10, 2023, the trial court signed a judgment, granting Homesite's motion for summary judgment, dismissing, with prejudice, all claims filed by Ms. Tucker against Homesite, and ordering that Homesite owed no defense or indemnity to Ms. Chatfield for the incident in question.

From the January 10, 2023 judgment, Ms. Tucker appeals, contending that the trial court committed error in:

(1) finding that Diana Wade was the sole owner of Unit 12B;

(2) finding that Diana Wade was the only named insured under the Homesite policy;

(3) failing to address her argument with regard to Section I and Section II Conditions of the policy ("the death provisions"), which extended liability coverage by declaring that an insured includes the person having proper temporary custody of the property until the appointment or qualification of a legal representative; and

(4) failing to find a genuine issue of material fact as to whether Ms. Chatfield had temporary custody of the insured premises.

3

## DISCUSSION

### *Summary Judgment*

Appellate courts review the grant or denial of summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. **Huggins v. Amtrust Insurance Company of Kansas, Inc.,** 2020-0516 (La. App. 1 Cir. 12/30/20), 319 So.3d 362, 365. A court shall grant summary judgment if the pleadings, memorandum, and admissible supporting documents show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). Material facts are those that potentially ensure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Daniels v. USAgencies Cas. Ins. Co.,** 2011-1357 (La. App. 1 Cir. 5/3/12), 92 So.3d 1049, 1055.

The summary judgment movant maintains the burden of proof. Nevertheless, if the movant will not bear the burden of proof at trial on the issue before the court on the motion, his burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden at trial. La. Code Civ. P. art. 966(D)(1). If the adverse party fails to meet this burden, there is no genuine issue of material fact, and, if appropriate, the court shall render summary judgment against him. See La. Code Civ. P. arts. 966(D)(1) and 967(B).

Thus, in deciding a motion for summary judgment, the court must first determine whether the supporting documents presented by the mover are sufficient to resolve all material factual issues. If not, summary judgment must be denied in favor of a trial on the merits. **Crockerham v. Louisiana Medical Mutual Insurance Company,** 2017-1590 (La. App. 1 Cir. 6/21/18), 255 So.3d 604, 608.

4

It is important to note, however, that when a motion for summary judgment is made and properly supported, an adverse party may not rest on the mere allegations or denials of her pleading. La. Code Civ. P. art. 967(B). Therefore, we must first conduct a *de novo* review of the evidence submitted with the motion for summary judgment and determine if there were no genuine issues of material fact. **Crockerham**, 255 So.3d at 608.

*Legal Precepts*

Summary judgment is appropriate for determining issues relating to insurance coverage. See La. Code Civ. P. art. 966(E); **Bosse v. Access Home Insurance Company**, 2018-0482 (La. App. 1 Cir. 12/17/18), 267 So.3d 1142, 1145. Additionally, interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. **Sanchez v. Callegan**, 99-0137 (La. App. 1 Cir. 2/18/00), 753 So.2d 403, 405. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which coverage could be afforded. **Reynolds v. Select Properties, Ltd.**, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183.

An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. **Highlands Underwriters Ins. Co. v. Foley**, 96-1018 (La. App. 1 Cir. 3/27/97), 691 So.2d 1336, 1340. Thus, an insurance policy should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. **Mayo v. State Farm Mut. Auto. Ins. Co.**, 2003-1801 (La. 2/25/04), 869 So.2d 96, 99. See also **Billiot v. Terrebonne Parish Sheriff's Office**, 98-0246 (La. App. 1 Cir. 2/19/99), 735 So.2d 17, 24, writ denied, 99-1376 (La. 7/2/99), 747 So.2d 22. The judiciary's role in interpreting an insurance policy is to determine the common intent of the parties to the contract. **Mayo**, 869 So.2d at 99. See also La. Civ. Code art. 2045. The initial

determination of the parties' intent is found in the insurance policy itself. See La. Civ. Code art. 2046. When a contract can be construed from the four corners of the policy without extrinsic evidence, the question of contractual interpretation is answered as a matter of law. **Brown v. Drillers, Inc.**, 93-1019 (La. 1/14/94), 630 So.2d 741, 749-750.

The parties' intent, as reflected by the words of an insurance policy, determines the extent of coverage. Such intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. See La. Civ. Code art. 2047; **Highlands Underwriters**, 691 So.2d at 1340. If the language in an insurance policy is clear and unambiguous, the agreement must be enforced as written, and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. **Highlands Underwriters**, 691 So.2d at 1340; **Robinson v. Heard**, 2001-1697 (La. 2/26/02), 809 So.2d 943, 945. Further, the party seeking coverage under an insurance policy (in this case, Ms. Tucker) has the burden of proving the existence of coverage, which includes proving that the defendant (in this case, Ms. Chatfield) is insured by the policy at issue. See **Beavers v. Hanover Insurance Company**, 2021-0070 (La. App. 1 Cir. 10/8/21), 331 So.3d 340, 343.

If the contract cannot be construed based on language contained therein due to an ambiguity, the court may look to extrinsic evidence to determine the parties' intent. **Maldonado v. Kiewit Louisiana Co.**, 2013-0756 (La. App. 1 Cir. 3/24/14), 146 So.3d 210, 218. When making the determination as to the parties' intent, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage. **Doerr v. Mobil Oil Corp.**, 2000-0947 (La. 12/19/00), 774 So.2d 119, 124, modified on other grounds on reh'g, 2000-0947 (La. 3/16/01), 782 So.2d 573. Ambiguity in a policy will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the

6

clause at the time the insurance contract was entered. **Fleniken v. Entergy Corp.,** 99-3023 (La. App. 1 Cir. 2/16/01), 790 So.2d 64, 69 n.4, writs denied, 2001-1269, 2001-1295 (La. 6/15/01), 793 So.2d 1250, 1252. The determination of whether a contract is clear or ambiguous is a question of law. **Watts v. Aetna Cas. and Sur. Co.,** 574 So.2d 364, 369 (La. App. 1 Cir.), writ denied, 568 So.2d 1089 (La. 1990).

## ASSIGNMENTS OF ERROR

In her first two assignments of error, Ms. Tucker asserts the trial court erred in making certain erroneous findings, as reflected in the trial court's written reasons for judgment. In her third and fourth assignments of error, Ms. Tucker addresses the death provisions of the Homesite policy and whether Ms. Chatfield had proper temporary custody of the insured premises at the time of the incident, which would have qualified her as an insured under the policy.

At the outset, we note that appellate courts review judgments and not reasons for judgment. **Walton v. State Farm Mutual Automobile Insurance Co.,** 2018-1510 (La. App. 1 Cir. 5/31/19), 277 So.3d 1193, 1199. In fact, judgments are often upheld on appeal for reasons different than those assigned by a trial court. **Wooley v. Lucksinger,** 2009-0571 (La. 4/1/11), 61 So.3d 507, 572. The written reasons for judgment are merely an explication of the trial court's determinations and do not alter, amend, or affect the final judgment being appealed. **Walton,** 277 So.3d at 1199.

Additionally, the standard of review of a summary judgment by an appellate court is *de novo*. Because this court reviews summary judgments *de novo*, we afford no deference to the trial court's underlying reasoning for its judgment. **John River Cartage, Inc. v. Louisiana Generating, LLC,** 2020-0162 (La. App. 1 Cir. 3/4/20), 300 So.3d 437, 453 n.12, citing **King v. Allen Court Apartments II,** 2015-0858 (La. App. 1 Cir. 12/23/15), 185 So.3d 835, 839, writ denied, 2016-0148 (La. 3/14/16), 189 So.3d 1069. On *de novo* review, we also afford no deference to

the legal standard or analysis applied by the trial court. Accordingly, we will review the summary judgment *de novo* to determine whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(A)(3).

As previously noted, the trial court in the instant case granted summary judgment in favor of Homesite, finding that Ms. Chatfield was neither a named insured, nor a resident relative of Diana Wade. On appeal, Ms. Tucker acknowledges that she does not seek to reverse the trial court's ruling in this regard. However, Ms. Tucker argues that pursuant to the undisputed facts and the clear policy language regarding the death of a person named in the declarations page of the policy, Ms. Chatfield is an insured under the Homesite policy. In the alternative, Ms. Tucker asserts that at the very least, there remains a genuine issue of material fact as to whether Ms. Chatfield qualifies as an insured under the death provisions of the policy.

Admittedly, the trial court made no mention of the death provisions in its written reasons for judgment or in its January 10, 2023 judgment. Generally, silence in a judgment of the trial court as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. **Schoolhouse, Inc. v. Fanguy**, 2010-2238 (La. App. 1 Cir. 6/10/11), 69 So.3d 658, 664. Because Ms. Tucker argues that coverage under the Homesite policy should be afforded to Ms. Chatfield pursuant to the death provisions, we will consider the trial court's silence as to Ms. Tucker's arguments below regarding this issue as a denial, and we review it accordingly.

In the instant case, we must look to the language of the Homesite policy to determine the extent of coverage, if any, that should be afforded to Ms. Chatfield for the incident in question. The following pertinent definitions are provided in the Homesite policy:

8

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations[3] and the spouse if a resident of the same household. ... In addition, certain words and phrases are defined as follows:

. . . .

3.    "Insured" means *you and residents of your household* who are:

a.    Your relatives; or

b.    Other persons under the age of 21 and in the care of any person named above.

Under Section II [Liability Coverages], "insured" also means:

c.    With respect to animals ... to which this policy applies, any person ... legally responsible for these animals ... which are owned by you or any person included in 3.a. or 3.b. above. ....

. . . .

4.    "Insured location" means:

a.    The "residence premises"; ....

. . . .

8.    "Residence premises" means the unit where you reside shown as the "residence premises" in the Declarations.[4]

Citing these provisions, Homesite argued that based on the undisputed facts, the policy issued to Douglas and Diana Wade did not provide coverage to Ms. Chatfield under the circumstances alleged. In support of its motion for summary judgment, Homesite submitted the deposition of Ms. Chatfield; the affidavit of Homesite's litigation adjuster, Eric Johnson,[5] with a copy of the Homesite policy attached; and a copy of Ms. Tucker's petition for damages.

Ms. Chatfield testified that she moved into Unit 12B in July or August 2017 with her two minor sons and one dog, Jazzy, a Great Dane.[6] In January 2018, she acquired another Great Dane, Allie, who was approximately six to eight weeks old at the time. Ms. Chatfield indicated that when she moved into Unit 12B, she

---

[3] The individuals listed on the 2017 renewal declarations page were Douglas and Diana Wade.

[4] The insured location listed on the 2017 renewal declarations page was the address of Unit 12B, 11182 River Highlands Drive, Saint Amant, Louisiana.

[5] According to Mr. Johnson, Homesite was unaware that Diana Wade did not reside at the policy address. Mr. Johnson further stated that had Homesite been made aware of same, the policy would have never been issued. While the issue of whether this was a material misrepresentation by the Wades was discussed at the motion for summary judgment hearing, the Homesite policy is clear that coverage could only be denied under these circumstances if Homesite proved the conduct was committed with the intent to deceive. This issue was not addressed below and, thus, will not be considered in our *de novo* review.

[6] According to the record, Jazzy was the dog involved in the incident with Ms. Tucker.

brought her own furniture with her. She further testified that she lives there rent free, all while maintaining the property for Diana Wade, who was not only aware of the living arrangement but has visited her granddaughter since she moved into Unit 12B.[7] According to Ms. Chatfield, they have a very large, extended family, and her grandparents purchased Unit 12B "[j]ust for the family to hang out at." Ms. Chatfield added that she pays the utilities and all of the bills associated with Unit 12B and also keeps the property from deteriorating by making repairs as needed. At the time of her deposition, September 2020, Ms. Chatfield was still living in Unit 12B with her fiancé and her four sons.

Ms. Chatfield indicated she was unaware if her grandmother had ever lived in Unit 12B but knew that her grandmother had owned Unit 12B "for some time" prior to her moving there in 2017. She stated that her parents had lived in Unit 12B in 2011 prior to purchasing a house. According to Ms. Chatfield, her grandmother lives in Florence, Mississippi. Ms. Chatfield noted that her grandparents had lived in Florence since before she was born. Ms. Chatfield described the Florence house as "kind of [her grandparents'] home base" and her grandmother's "favorite house to live in." When asked how many houses her grandmother owned, Ms. Chatfield replied, "I have no idea."

In opposition to the motion, Ms. Tucker offered the affidavit of Tracey W. Langston, Ms. Chatfield's mother;[8] the affidavit of her attorney, with attachments, including information regarding the 2017 renewal of the Wade's Homesite policy; excerpts from Ms. Chatfield's deposition; the affidavit of Peter Pistorius, a land and

---

[7] Ms. Chatfield noted that her grandfather, Douglas Wade, passed away in October 2012.

[8] We note that Homesite objected to the use of Ms. Langston's affidavit as summary judgment evidence, arguing that the affidavit was irrelevant, based on hearsay, and did not meet the requirements of La. Code Civ. P. art. 967. Although the matter was argued at the hearing below, the trial court did not indicate whether it considered the affidavit in its ruling on the motion for summary judgment. Nonetheless, we have reviewed the affidavit and find that, with the exception of the portions of the affidavit that are hearsay, see La. Code Evid. arts. 801, et seq., the affidavit is admissible summary judgment evidence, and we have considered the affidavit as part of our de novo review.

10

title abstractor; and excerpts of the Homesite policy. In support of her position that coverage should be afforded to Ms. Chatfield, Ms. Tucker pointed to a portion of the policy entitled, "Sections I And II - Conditions," which contained the following provisions concerning the death of an insured:

> 9. Death, If any person named in the Declarations or the spouse, if a resident of the same household, dies:
> a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;
> b. "Insured" includes:
> (1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and
> (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Ms. Tucker argued the evidence showed that Douglas Wade was named in the Homesite policy declarations page, which had a policy period of July 2, 2017 through July 2, 2018. She noted further that because Mr. Wade was deceased and no legal representative had been appointed and qualified on his behalf, the death provisions contained in Paragraph 9(b)(2) operated to afford coverage herein. Moreover, although the Homesite policy does not define the terms "proper temporary custody," Ms. Tucker maintained the evidence supported a finding that Ms. Chatfield had custody of Unit 12B as Ms. Chatfield was living there with her two sons and the two dogs, rent free, all while maintaining the property for Diana Wade, who was fully aware of the living arrangement.

Despite the provisions in its policy regarding the death of a person named in the declarations page, Homesite asserts that Ms. Chatfield is not an insured because her presence in Unit 12B is that of a "full-time, long-term resident" and not someone having "proper temporary custody" of the property pending "appointment and qualification of a legal representative." Moreover, although the policy uses the term "proper temporary custody," Homesite cites La. Civ. Code

11

arts. 934 and 935 and argues that "seizin" and true legal "custody" of Douglas Wade's property and property rights are with his surviving spouse, Diana Wade.[9] Homesite maintains that the death provisions of the policy are "intended to address the need for emergent care for the insured property due to the sudden death of the insured so that the property would be protected and not vacant."

In doing so, however, Homesite ignores the fact that its policy does not equate "custody" of the property with ownership of the property. The term "seizin," is not found anywhere in Homesite's policy. Rather, the policy provides that upon the death of a person named in the declarations, any person having "proper temporary custody" of the person's property until appointment and qualification of a legal representative becomes an insured. However, the policy fails to define "proper temporary custody." Moreover, Homesite offered no evidence of the appointment and qualification of a legal representative of Douglas Wade in either Mississippi or Louisiana. In fact, the only evidence offered on this issue was submitted by Ms. Tucker in the form of the affidavit of Peter Pistorius. Mr. Pistorius stated that he was hired by counsel for Ms. Tucker to perform a search of the conveyance and suit records of Ascension and Livingston parishes for any probate proceedings filed in the name of, or on behalf of, Douglas Wade. After completing his research, he confirmed that no probate proceedings had been filed in either parish for Douglas Wade.

The issue before this court is whether Ms. Chatfield had "proper temporary custody" of Unit 12B at the time of the incident in question such that the "death

---

[9] "Succession occurs at the death of a person." La. Civ. Code art. 934. "Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them. Prior to the qualification of a succession representative only a universal successor may represent the decedent with respect to the heritable rights and obligations of the decedent." La. Civ. Code art. 935. We note, however, that even if the Homesite policy did include language regarding seizin and ownership rather than custody, the record is still devoid of evidence to support a finding that Diana has anything other than usufruct over her deceased husband's half of the insured property. See La. Civ. Code art. 890.

provisions" of the Homesite policy provided coverage herein. As provided by the Homesite policy, if any person named in the declarations page is deceased, an insured includes any person having "proper temporary custody" of the property until appointment and qualification of a legal representative. The words in that phrase must be interpreted in accordance with their generally prevailing meaning. La. Civ. Code art. 2047.

Black's Law Dictionary pertinently defines "proper" as "[a]ppropriate, suitable, right, fit, or correct; according to the rules ... [c]onforming to the best ethical or social usage; allowable, right, and becoming. Black's Law Dictionary (11th ed. 2019). "Temporary" is defined as "[l]asting for a time only; existing or continuing for a limited (usu. short) time; transitory." Black's Law Dictionary (11th ed. 2019). Finally, "custody" is defined as "[t]he care and control of a thing or person for inspection, preservation, or security." Black's Law Dictionary (11th ed. 2019).

There is no dispute that Douglas Wade was named in the declarations page of the Homesite policy and that he was deceased at the time of the incident. Moreover, there was no evidence of the "appointment and qualification of a legal representative" of Douglas Wade. As previously indicated, Ms. Chatfield was living in Unit 12B with the permission of Diana Wade, the owner of Unit 12B and named insured on the Homesite policy. Ms. Chatfield was not paying rent and was taking care of the property for her grandmother. At the time of Ms. Tucker's injuries, Ms. Chatfield had only lived in Unit 12B for approximately seven months.

Based on our *de novo* review of the evidence offered in support of and in opposition to Homesite's motion for summary judgment, we find that the policy at issue may reasonably be interpreted to provide coverage to Ms. Chatfield for Ms. Tucker's claims. Therefore, summary judgment was not appropriate as a matter of law. Accordingly, the trial court's judgment granting Homesite's motion for

summary judgment, decreeing that Homesite owes no defense or indemnity to Ms. Chatfield, and dismissing all claims made against Homesite, with prejudice, is hereby reversed.

## DECREE

For the above and foregoing reasons, we reverse the trial court's January 10, 2023 judgment and remand for further proceedings. All costs associated with this appeal are assessed against Homesite Insurance Company.

**REVERSED AND REMANDED.**